66 A.3d 286

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Qu'Eed BATTS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2012.

Decided March 26, 2013.

116

Bradley Steven Bridge, Defender Association of Philadelphia, Philadelphia, Sara E. Jacobson, Temple University Law School, Philip D. Lauer, Easton, Marsha Levick, Juvenile Law Center, for Qu'Eed Batts.

Karl Baker, Ellen T. Greenlee, Defender Association of Philadelphia, Philadelphia, for Appellant Amicus Curiae, Defender Association of Philadelphia.

Jessica Rachel Feierman, Emily Cahn Keller, Juvenile Law Center, for Appellant Amicus Curiae, Juvenile Law Center.

118

Terence Patrick Houck, Kelly Ann Lewis Fallenstein, John Michael Moranelli, Northampton County District Attorney's Office, Doylestown, for Commonwealth of Pennsylvania.

Hugh J. Burns Jr., Ronald Eisenberg, Philadelphia, Edward Michael Marsico Jr., Harrisburg, Edward F. McCann Jr., Philadelphia, Philadelphia District Attorneys Office, Shawn C. Wagner, Adams County District Attorney's Office, Gettysburg, R. Seth Williams, Philadelphia, for Appellee Amicus Curiae, Pennsylvania District Attorneys Association.

*OPINION*

Justice SAYLOR.

This case concerns the appropriate remedy, on direct appeal, for the constitutional violation occurring when a mandatory life-without-parole sentence has been imposed on a defendant convicted of first-degree murder, who was under the age of eighteen at the time of his offense.

On February 7, 2006, Appellant, then fourteen years old, walked up the front porch steps of a house, shot Clarence Edwards in the head, and shot Corey Hilario in the back as the man attempted to flee. Mr. Edwards died on the way to the hospital while Mr. Hilario sustained serious bodily injury but eventually recovered. Following an investigation, police took Appellant into custody and conducted a videotaped interview. Appellant informed the detectives that he had recently been inducted into a gang, and, on the night of the shooting, had been in a car with several other members of the gang, including a senior member named Vernon Bradley. According to Appellant, when the car was outside of the victims' residence, Bradley had given him a gun and a mask and told him to "put some work in," which Appellant interpreted as an order to shoot the two men on the porch. Appellant admitted that he had shot Mr. Edwards and Mr. Hilario, but stated that he only did so because he believed that he would be killed if he

did not follow Bradley's order. Appellant also told the detectives that Bradley had promoted him to a higher ranking within the gang after the murder. The police then charged Appellant with, *inter alia,* first-degree murder, attempted murder, and aggravated assault. Although Appellant was a juvenile, the nature of the charges automatically placed the matter within the jurisdiction of the criminal court. *See* 42 Pa.C.S. § 6302 (excluding murder from the definition of a "delinquent act").

Prior to trial, Appellant filed a motion requesting that his case be transferred to juvenile court pursuant to Section 6322 of the Juvenile Act, which requires a juvenile seeking transfer to establish, by a preponderance of the evidence, that "the transfer will serve the public interest." 42 Pa.C.S. § 6322(a). The trial judge conducted a hearing in order to consider the statutory factors applicable to the transfer decision, including: the nature and circumstances of the offense; the impact of the offense on the victims and the community; the degree of culpability exhibited by the juvenile and any potential threat to public safety posed by the juvenile; the juvenile's amenability to rehabilitation and the time frame necessary for such; and individual characteristics of the juvenile, such as his age, maturity, mental capacity, prior delinquent history, and degree of criminal sophistication. *See* 42 Pa.C.S. § 6355(a)(4)(iii). Based on testimony presented by both Appellant and the Commonwealth, including experts in forensic psychology, the trial judge determined that transfer to the juvenile system was not appropriate. The judge first emphasized the "horrendous" nature of the crime and the "severe threat to the public" demonstrated by Appellant's "total lack of respect for human life." *Commonwealth v. Batts*, No. 1215–2006, *slip op.* at 5 (C.P. Northampton Feb. 21, 2007). In addition, the trial judge credited the testimony of the Commonwealth's experts that Appellant's "rehabilitation, if it ever occurs, will occur only after years of treatment and a willingness on the part of [Appellant] to seek treatment and rehabilitation, something that their clinical evaluations indicate [Appellant] is not ready to accept." *Id.* at 6. The judge also found

that Appellant was "streetwise," with "a well-developed criminal mentality and the degree of maturity necessary to commit audacious criminal acts." *Id.*

Accordingly, the matter proceeded to trial, where the Commonwealth presented, *inter alia*, the testimony of Mr. Hilario, several officers and detectives, and the woman who had been driving the car in which Appellant, Bradley, and other gang members had been riding on the night of the murder. In defense, Appellant testified, consistent with his statement to the police, admitting that he had shot the victims, *see* N.T. July 30, 2007, at 68, 137–38, on the instruction of Bradley, *see id.* at 65–66, because his life would have been in danger if he did not follow Bradley's order, *see id.* at 56, 67. In addition, both the Commonwealth and Appellant presented testimony from expert forensic psychologists who opined as to the psychological factors that may have played a role in Appellant's conduct. Ultimately, despite his defense of duress, the jury convicted Appellant of first-degree murder, attempted murder, and aggravated assault. At sentencing, the court imposed the mandatory term of life imprisonment for first-degree murder, *see* 18 Pa.C.S. § 1102(a)(1) (superseded, relative to juvenile offenders, by 18 Pa.C.S. § 1102.1), which rendered Appellant ineligible for parole, *see* 61 Pa.C.S. § 6137(a)(1), as well as six to twenty years for attempted homicide, to be served concurrently.[1]

After the trial court denied Appellant's post-sentence motions, he appealed to the Superior Court. Appellant argued, *inter alia*, that the imposition of a mandatory sentence of life imprisonment without the possibility of parole was unconstitutional in light of the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which held that subjecting juveniles under the age of eighteen to the death penalty violated the Eighth Amendment's prohibition on cruel and unusual punishment. *See id.* at 578, 125 S.Ct. at 1200.

---

1. Appellant's conviction for aggravated assault merged with the attempted murder conviction for purposes of sentencing.

The Superior Court upheld the sentence of life without parole, distinguishing *Roper* because that case discussed only the death penalty, which the court emphasized was categorically different than a sentence of imprisonment. *See Commonwealth v. Batts*, 974 A.2d 1175, ——, No. 766 EDA 2008, slip op. at 12 (Pa.Super.2009) (table) (quoting *Commonwealth v. Wilson*, 911 A.2d 942, 946 (Pa.Super.2006), for the proposition that: "[T]he *Roper* decision bars only the imposition of the death penalty in cases involving juvenile offenders. The ruling does not affect the imposition of a sentence of life imprisonment without parole, the sentence imposed in the present case."). Further, the court explained that prior caselaw had determined that imposing the statutorily-required life-without-parole sentence on juvenile offenders—even those who were fourteen years old at the time of the crime—did not violate the Eighth Amendment. *See id.* at 13 (citing *Commonwealth v. Sourbeer*, 492 Pa. 17, 33, 422 A.2d 116, 123–24 (1980) (plurality), *superseded by statute on other grounds*, 42 Pa.C.S. § 6322; *Commonwealth v. Carter*, 855 A.2d 885, 892 (Pa.Super.2004)). Addressing Appellant's as-applied Eighth Amendment challenge, the court concluded that the sentence was not grossly disproportionate to the gravity of the offense, given that "Appellant was convicted as the principal actor of a brutal, senseless and premeditated murder." *Id.* at 14. The Superior Court also rejected Appellant's contention that due process required the trial court to first consider mitigating circumstances before imposing a life sentence on a juvenile, noting that caselaw requiring the consideration of mitigating circumstances was limited to the context of the death penalty, *see id.* at 15–16 (citing *Sumner v. Shuman*, 483 U.S. 66, 76, 107 S.Ct. 2716, 2722–23, 97 L.Ed.2d 56 (1987)), and that adults may be sentenced to a mandatory term of life-without-parole without consideration of mitigating evidence, *see id.* at 16 (citing *Harmelin v. Michigan*, 501 U.S. 957, 996, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991)).

This Court granted allowance of appeal, limited to the questions of whether *Roper* rendered imposition of a sentence of life imprisonment without the possibility of parole on a

juvenile unconstitutional and whether Appellant's Eighth and Fourteenth Amendment rights were violated by the mandatory nature of his sentence. *See Commonwealth v. Batts,* 603 Pa. 65, 981 A.2d 1283 (2009) *(per curiam).* We further reserved consideration pending disposition of *Graham v. Florida,* —— U.S. ——, 129 S.Ct. 2157, 173 L.Ed.2d 1155 (2009), and *Sullivan v. Florida,* —— U.S. ——, 129 S.Ct. 2157, 173 L.Ed.2d 1155 (2009).

After the Supreme Court decided *Graham v. Florida,* 560 U.S. 48, ——, 130 S.Ct. 2011, 2033, 176 L.Ed.2d 825 (2010),[2] which held that imposition of a sentence of life imprisonment without the possibility of parole on juvenile non-homicide offenders violated the Eighth Amendment, the parties filed substantive briefs addressing the federal constitutional issues. In addition, for the first time, Appellant also included a separate argument concerning the constitutionality of his sentence under Article 1, Section 13 of the Pennsylvania Constitution, which prohibits "cruel punishments." Pa. Const. art. I, § 13. Following oral arguments, this Court again reserved consideration, this time pending disposition of *Miller v. Alabama* and *Jackson v. Hobbs,* which were to be argued in tandem. *See Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011) *(per curiam); Jackson v. Hobbs,* —— U.S. ——, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011) *(per curiam).* The United States Supreme Court issued a deeply divided decision in those cases in June 2012. *See Miller v. Alabama,* —— U.S. ——, ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

 Like Appellant, Miller and Jackson were each subject to a mandatory sentence of life imprisonment without the possibility of parole. The underlying homicide, in each case, was committed when the defendant was fourteen years old, though the circumstances of each crime substantially differed. In the course of concluding that such sentences violate the Eighth Amendment, the five-Justice majority related that *Graham* and *Roper* "establish that children are constitutional-

---

**2.** The writ of *certiorari* in *Sullivan* was dismissed as improvidently granted. *See Sullivan v. Florida,* 560 U.S. 181, 130 S.Ct. 2059, —— L.Ed.2d —— (2010) *(per curiam).*

ly different from adults for purposes of sentencing," given that children lack maturity and have "an underdeveloped sense of responsibility," can be more susceptible to "negative influences and outside pressures," and have "less fixed" character traits. *Id.* at ——, 132 S.Ct. at 2464. The "foundational principle" of *Graham* and *Roper,* the majority continued, was that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Id.* at ——, 132 S.Ct. at 2466. The majority analogized mandatory life-without-parole sentences for juvenile offenders to the death penalty, finding that, just as individualized consideration of mitigating circumstances—particularly youth—was constitutionally required before the imposition of a capital sentence, such concerns must also be taken into account when imposing the harshest sentence possible for a juvenile. *See id.* at ——, 132 S.Ct. at 2467–68. Specifically, the majority explained that the mandatory nature of the life-without-parole sentences at issue precluded the sentencing court from considering important factors, such as chronological age, level of maturity, family and home environment, the circumstances of the offense, the extent of the juvenile's participation in the unlawful conduct, the impact of familial and peer pressures, the juvenile's ability to negotiate with police or prosecutors, and the possibility of rehabilitation. *See id.* at ——, 132 S.Ct. at 2468. Absent the ability to reflect on these concerns, the majority reasoned, the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile "poses too great a risk of disproportionate punishment." *Id.* at ——, 132 S.Ct. at 2469.

However, the Supreme Court did not entirely foreclose the imposition of a life-without-parole sentence on a juvenile offender; rather, the majority stated that the occasion for such a punishment would be "uncommon," and, in any event, must first "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at ——, 132 S.Ct. at 2469. In this regard, the majority distinguished its prior ruling in *Harmelin,* 501 U.S. at 996, 111 S.Ct. at 2702, noting that *Harmelin*

"had nothing to do with children and did not purport to apply its holding to the sentencing of juvenile offenders." *Miller*, —— U.S. at ——, 132 S.Ct. at 2470. Indeed, the majority indicated, "if (as *Harmelin* recognized) death is different, children are different too." *Id.* at ——, 132 S.Ct. at 2470. The Court also determined that proceedings which allow for the potential transfer of the case from adult to juvenile court (or from juvenile to adult court), even those that provide for individualized consideration, "cannot substitute for discretion at post-trial sentencing in adult court—and so cannot satisfy the Eighth Amendment." *Id.* at ——, 132 S.Ct. at 2475. Observing that the information available at the time of such transfer proceedings will often be limited, the majority reasoned that "transfer decisions often present a choice between extremes: light punishment as a child or standard sentencing as an adult (here, life without parole)," which significantly differs from "discretionary sentencing in adult court" that allows for intermediate options, namely, "a lifetime prison term *with* the possibility of parole or a lengthy term of years." *Id.* at ——, 132 S.Ct. at 2474–75 (emphasis in original). Thus, the majority explained that its decision "mandates only that a sentence follow a certain process-considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Id.* at ——, 132 S.Ct. at 2471.[3]

Justice Breyer, joined by Justice Sotomayor, filed a joining concurrence, opining that "[t]he only juveniles who may constitutionally be sentenced to life without parole are those convicted of homicide offenses who kill or intend to kill," differentiating such offenders from those who were convicted of murder as a result of participation in a felony. *Id.* at ——, 132 S.Ct. at 2476 (Breyer, J., concurring) (citing *Graham*, 560 U.S. at ——, 130 S.Ct. at 2027). This distinction, Justice Breyer reasoned, stems from the "fallacious" application of the theory of transferred intent—which is based on "the idea that one

---

3. In this regard, the Court reserved consideration of the defendants' argument that the Eighth Amendment requires a categorical bar against imposition of a sentence of life without the possibility of parole for juveniles aged fourteen and younger. *See Miller*, —— U.S. at ——, 132 S.Ct. at 2469.

engaged in a dangerous felony should understand the risk that the victim of the felony could be killed, even by a confederate"—to a juvenile who did not kill or intend to kill, notwithstanding the fact that "the ability to consider the full consequences of a course of action and to adjust one's conduct accordingly is precisely what we know juveniles lack capacity to do effectively." *Id.*

Four Justices dissented in three separate opinions. Chief Justice Roberts, joined by Justices Scalia, Thomas, and Alito, first noted that "the direction of society's evolution" had moved away from implementing a rehabilitative approach in favor of reducing recidivism, which "led many legislatures to reduce or eliminate the possibility of parole, imposing longer sentences in order to punish criminals and prevent them from committing more crimes." *Id.* at ——, 132 S.Ct. at 2478 (Roberts, C.J., dissenting) (citations omitted). Notwithstanding this progression, Chief Justice Roberts opined, the majority's rationale—"that because juveniles are different from adults, they must be sentenced differently"—will ultimately lead to not only a bar on life-without-parole sentences for juveniles, but also to "never permitting juvenile offenders to be tried as adults." *Id.* at ——, 132 S.Ct. at 2482. The Chief Justice reasoned that this is especially true in light of the majority's "announce[ment] that discretionary life without parole for juveniles should be 'uncommon'—or, to use a common synonym, 'unusual.'" *Id.* at ——, 132 S.Ct. at 2481. However, Chief Justice Roberts explained, mandatory life-without-parole sentences for juveniles convicted of homicide are not "unusual," *id.* at ——, 132 S.Ct. at 2477, and, despite the lower number of jurisdictions permitting life-without-parole sentences for juveniles as compared to the punishment addressed in *Graham,* the number of actual life-without-parole sentences imposed on juveniles "is over 5,000 times higher than the corresponding number in *Graham,*" *id.* at ——, 132 S.Ct. at 2479. The Chief Justice also faulted the majority for its reliance on *Graham* and *Roper,* as *Graham* expressly stated that murder should not be compared to the nonhomicide crimes at issue in that case, and "*Roper* reasoned that the

death penalty was not needed to deter juvenile murderers in part because 'life imprisonment without the possibility of parole' was available." *Id.* at ——, 132 S.Ct. at 2481 (citations omitted).

Justice Thomas, joined by Justice Scalia, dissented based on his disagreement with the rationales of *Roper* and *Graham*, and, like Chief Justice Roberts, found those cases inapplicable in the present context. *See id.* at ——, 132 S.Ct. at 2485 (Thomas, J., dissenting). Additionally, Justice Thomas reasoned that the majority's requirement of an individualized sentencing procedure prior to the imposition of a life-without-parole sentence was at odds with *Harmelin*'s conclusion that such a procedure does not apply outside of capital cases due to "the qualitative difference between death and all other penalties." *Id.* at ——, 132 S.Ct. at 2485 (quoting *Harmelin*, 501 U.S. at 995, 111 S.Ct. at 2702).

Finally, Justice Alito, joined by Justice Scalia, filed a dissenting opinion, noting that the majority decision demonstrated that the Court's "Eighth Amendment cases are no longer tied to any objective indicia of society's standards," and disregarded the legislative "position that the risk that these offenders will kill again outweighs any countervailing consideration, including reduced culpability due to immaturity or the possibility of rehabilitation." *Id.* at ——, 132 S.Ct. at 2490 (Alito, J., dissenting).

In light of the Supreme Court's opinion in *Miller*, we directed the parties to submit supplemental briefing and conducted oral argument on two additional issues:

1) What is, as a general matter, the appropriate remedy on direct appeal in Pennsylvania for a defendant who was sentenced to a mandatory term of life imprisonment without the possibility of parole for a murder committed when the defendant was under the age of eighteen?

2) To what relief, if any, is appellant entitled from the mandatory term of life imprisonment without parole for the murder he committed when he was fourteen years old?

*See Commonwealth v. Batts,* No. 79 MAP 2009, July 9, 2012 Order (*per curiam*).

As a final contextual matter, on October 25, 2012, the Governor signed into law a new sentencing scheme for persons under the age of eighteen convicted of murder. *See* Act of Oct. 25, 2012, P.L. ——, No. 204; *see also Commonwealth v. Lofton,* 57 A.3d 1270, 1277–78 (Pa.Super.2012). This legislation reflects the General Assembly's effort to address *Miller.*

Under the new statute, a person under fifteen years of age at the time of the offense may receive "a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life." 18 Pa.C.S. § 1102.1(a)(2). A person at least fifteen but under eighteen years of age may receive "a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S. § 1102.1(a)(1). In determining whether a life-without-parole sentence should be imposed pursuant to this statute, the court must take into account various individualized factors, including: the nature and circumstances of the offense; the defendant's age, mental capacity, maturity, culpability, and degree of criminal sophistication; and the success or failure of any prior rehabilitative attempts. *See* 18 Pa.C.S. § 1102.1(d). The statute also leaves room for the court to consider any other factors that it deems relevant to its assessment. *See* 18 Pa.C.S. § 1102.1(d)(7)(vii).

The new sentencing statute, by its terms, applies only to minors convicted of murder on and after the date *Miller* was issued (June 25, 2012). *See* Act of Oct. 25, 2012, P.L. ——, No. 204 § 2; 18 Pa.C.S. § 1102.1(a). Accordingly, it does not apply to Appellant, and it does not moot the present controversy.

The questions raised in this appeal are matters of law; our standard of review is de novo; and our scope of review is plenary. *See Commonwealth v. Davidson,* 595 Pa. 1, 11, 938 A.2d 198, 203 (2007).

## I.

As reflected above, given the developing jurisprudence, our focus in this appeal has shifted from broadly questioning the constitutionality of a life-without-parole sentence imposed on a juvenile offender to a narrow issue concerning the appropriate remedy for the Eighth Amendment violation that, under *Miller*, occurred when Appellant was mandatorily sentenced to life imprisonment without the possibility of parole upon his conviction for first-degree murder. Further, despite the broad framing of the questions at hand, Appellant has confined his arguments to the context of first-degree murder; hence, the issues identified by Justice Breyer in his *Miller* concurrence, *see Miller*, —— U.S. at ——, 132 S.Ct. at 2476 (Breyer, J., concurring) (discussing additional constitutional concerns connected with the imposition of life-without-parole sentences on juveniles convicted of murder as a result of participation in a felony who have neither killed nor intended to kill), are not implicated in the present matter.

Substantively, Appellant asserts that the statutory scheme providing for a mandatory sentence of life-without-parole upon conviction of first-degree murder is unconstitutional in its entirety in light of *Miller*. Hence, Appellant contends that this Court should look to other statutes existing at the time that the offense was committed in order to determine the appropriate sentence that may be imposed consistent with the Eighth Amendment. *See* Supplemental Brief for Appellant at 7–8 (citing *Miller*, —— U.S. at ——, 132 S.Ct. at 2464). This existing constitutional sentence, Appellant argues, should be based on the most severe lesser included offense, namely, third-degree murder, with a maximum term of forty years' imprisonment. *See id.* at 8 (citing 18 Pa.C.S. § 1102(d)). Devising any other sentence would, in Appellant's view, be most appropriately left to the Legislature. *See id.* at 8–9 (citing *Spectrum Arena L.P. v. Commonwealth*, 603 Pa. 180, 197–98, 983 A.2d 641, 651 (2009) ("It is not within this Court's power to alter this scheme and the impact of any inconsistency is more properly addressed directly to the legislature.") (citations omitted)). Appellant contends that this approach is

particularly apt in the present matter, as it recognizes that "juveniles are categorically less culpable than adults," *id.* at 10 (citing *Miller,* —— U.S. at ——, 132 S.Ct. at 2464), and ameliorates the concern that juveniles sentenced to life imprisonment will necessarily serve a longer term than adults receiving the same sentence, *see id.* at 11 (citing *Graham,* —— U.S. at ——, 130 S.Ct. at 2028). Moreover, Appellant maintains that this remedy is consistent with that applied in analogous cases. *See id.* at 9 (citing *Commonwealth v. Story,* 497 Pa. 273, 282, 440 A.2d 488, 492 (1981) (imposing a sentence of life imprisonment when a statute mandating imposition of the death penalty in certain circumstances was found unconstitutional)); *id.* at 10 (citing *Rutledge v. United States,* 517 U.S. 292, 306, 116 S.Ct. 1241, 1250, 134 L.Ed.2d 419 (1996), for the proposition that "where a greater offense must be reversed, the courts may enter judgment on the lesser included offense").

A remedy that would permit a court to impose a sentence of life imprisonment with the possibility of parole, Appellant continues, would still violate the Eighth Amendment under *Miller,* as the mandatory nature of such a sentence (absent further revision to the statutory scheme) fails to take into account the age-related factors set forth by the Supreme Court. *See* Supplemental Reply Brief for Appellant at 4 n.3 (citing *Miller,* —— U.S. at ——, 132 S.Ct. at 2467). Accordingly, Appellant argues that he is entitled to a remand for an individualized sentencing hearing in which the judge should consider the factors delineated in *Miller* prior to imposing an appropriate sentence pursuant to the statutory penalty for third-degree murder. *See* Supplemental Brief for Appellant at 12 (citing *Miller,* —— U.S. at ——, 132 S.Ct. at 2468).

Characterizing the impact of *Miller* on the current sentencing scheme as "minimal," the Commonwealth responds that the unconstitutional portion of the sentencing scheme is the statute governing parole eligibility, which does not distinguish juvenile offenders when stating that parole may not be granted to those serving a life sentence. *See* Supplemental Brief for Commonwealth at 7 (citing 61 Pa.C.S. § 6137(a)(1) (exclud-

ing inmates serving terms of life imprisonment from those who may be released on parole)). Because this portion of the statute is severable, the Commonwealth continues, the "remaining unaltered statutory sentencing provisions," including Section 1102(a) of the Criminal Code, still require that the court impose a sentence of life imprisonment for a juvenile convicted of first-degree murder. *See* Supplemental Brief for Commonwealth at 8 (citing 18 Pa.C.S. § 1102(a) (superseded, in relevant part)). In the Commonwealth's view, however, the judge now has discretion, based on the age-related considerations set forth in *Miller,* to impose the sentence either without parole or with the possibility of parole after a specified term of years. *See id.* The Commonwealth observes that the United States Supreme Court expressly limited its holding in this regard:

> Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham.* Instead, it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty.

*Miller,* —— U.S. at ——, 132 S.Ct. at 2471. The Commonwealth also notes that, in other cases, the Superior Court has remanded for resentencing in light of *Miller* for the trial court to consider the relevant factors and determine whether a sentence of "life imprisonment with, or without, the possibility of parole" should be imposed. Supplemental Brief for Commonwealth at 10 (citing *Commonwealth v. Knox,* 50 A.3d 732, 745 (Pa.Super.2012)). Thus, the Commonwealth reasons that the appropriate remedy for Appellant's unconstitutionally mandatory life-without-parole sentence is for this Court to remand for a new sentencing hearing at which the trial court may consider the factors detailed in *Miller* and impose a life sentence, either with or without parole. *See id.* at 10–11.

The Commonwealth's *amicus,* the Pennsylvania District Attorneys Association, adds that Appellant's argument is, in essence, an attempt to "negate[ ] his first degree murder conviction" in order to obtain the lesser sentence for third-

degree murder. Supplemental *Amicus* Brief at 11. In this regard, *amicus* argues that the capital cases relied upon by Appellant are inapposite, as they involved death sentences that "could no longer be imposed because no applicable sentencing statute existed." *Id.* at 11–12 (citing Story, 497 Pa. at 282, 440 A.2d at 492). By contrast, *amicus* continues, *Miller* did not invalidate the entire sentencing scheme and does not prevent Appellant from receiving a life-without-parole sentence after the trial court considers the age-related factors set forth by the Supreme Court. *See id.* at 12 (citing *Miller,* —— U.S. at ——, 132 S.Ct. at 2471). Similarly, *amicus* distinguishes *Rutledge* because that case involved convictions for two offenses that were based on the same activity, which necessitated vacating one conviction and sentence. *Id.* at 12 n. 7 (citing *Rutledge,* 517 U.S. at 307, 116 S.Ct. at 1250–51). Moreover, *amicus* asserts that "[n]othing in that case, or any other case, suggests that a sentence of life without parole, originally imposed in a constitutionally unsound manner, cannot be reimposed in a constitutionally sound one." *Id.* at 12.

We find the Commonwealth's construction of the applicable statutes to be the best supported. Appellant's argument that the entire statutory sentencing scheme for first-degree murder has been rendered unconstitutional as applied to juvenile offenders is not buttressed by either the language of the relevant statutory provisions or the holding in *Miller.* Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, *see* 18 Pa.C.S. § 1102(a), does not itself contradict *Miller;* it is only when that mandate becomes a sentence of life-without-parole as applied to a juvenile offender—which occurs as a result of the interaction between Section 1102, the Parole Code, *see* 61 Pa.C.S. § 6137(a)(1), and the Juvenile Act, *see* 42 Pa.C.S. § 6302—that *Miller*'s proscription squarely is triggered. *See Miller,* —— U.S. at ——, 132 S.Ct. at 2469. *Miller* neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. *See id.* at ——, 132 S.Ct. at 2469. Rather, *Miller* requires only

that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile. *See id.* at ——, 132 S.Ct. at 2467–68.

We recognize, as a policy matter, that *Miller*'s rationale—emphasizing characteristics attending youth—militates in favor of individualized sentencing for those under the age of eighteen both in terms of minimum and maximum sentences. In terms of the actual constitutional command, however, *Miller*'s binding holding is specifically couched more narrowly. *See id.* at ——, 132 S.Ct. at 2469 ("We ... hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison *without possibility of parole* for juvenile offenders.") (emphasis added). The High Court thus left unanswered the question of whether a life sentence with the possibility of parole offends the evolving standards it is discerning.

Significantly, in the arena of evolving federal constitutional standards, we have expressed a reluctance to "go further than what is affirmatively commanded by the High Court" without "a common law history or a policy directive from our Legislature." *Commonwealth v. Sanchez,* 614 Pa. 1, 70, 36 A.3d 24, 66 (Pa.2011), *cert. denied,* —— U.S. ——, 133 S.Ct. 122, 184 L.Ed.2d 58 (2012). Moreover, barring application of the entire statutory scheme as applied to juveniles convicted of first-degree murder, based solely on the policy discussion in *Miller* (short of its affirmative holding), would contradict the "strong presumption that legislative enactments do not violate the constitution." *Commonwealth v. Chase,* 599 Pa. 80, 89, 960 A.2d 108, 112 (2008); *see also* 1 Pa.C.S. § 1922(3) (presumption that the General Assembly does not intend to violate the federal or state constitutions when it enacts legislation).

In addition, Appellant's argument that he should be sentenced as if he had been convicted of the lesser offense of third-degree murder finds little support in the authorities upon which he relies, as such caselaw is simply inapplicable to the present circumstances. In *Story,* for example, this Court imposed a life sentence because the effectuation of a death

sentence would violate the defendant's equal protection and due process rights. *See Story*, 497 Pa. at 281, 440 A.2d at 492 ("Because appellant was tried, convicted, and sentenced to death under an unconstitutional statute, he must be treated the same as all those persons whose death penalties have been set aside."). Notably, the life sentence imposed in *Story*, like the death penalty that was vacated, was a legislatively sanctioned punishment for first-degree murder and not a lesser offense. *See id.* at 277, 440 A.2d at 490. *Rutledge* is similarly distinguishable, as that case involved the vacation of one conviction and sentence where the defendant had been convicted of two separate crimes, one of which was determined to be a lesser-included offense. *See Rutledge*, 517 U.S. at 307, 116 S.Ct. at 1250. Here, by contrast, Appellant's conviction for first-degree murder has not been vacated; rather, we are tasked with determining an appropriate scheme for resentencing for that offense, consistent with *Miller*.

Regarding the appropriate age-related factors, as the Commonwealth and its *amicus* observe, the Superior Court has considered the impact of *Miller* and vacated and remanded for resentencing, instructing the trial court that:

> [A]t a minimum it should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Knox*, 50 A.3d at 745 (citing *Miller*, —— U.S. at ——, 132 S.Ct. at 2455). We agree with the Commonwealth that the imposition of a minimum sentence taking such factors into account is the most appropriate remedy for the federal constitutional violation that occurred when a life-without-parole sentence was mandatorily applied to Appellant.

We recognize the difference in treatment accorded to those subject to non-final judgments of sentence for murder as of *Miller*'s issuance and those convicted on or after the date of the High Court's decision. As to the former, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing. Defendants in the latter category are subject to high mandatory minimum sentences and the possibility of life without parole, upon evaluation by the sentencing court of criteria along the lines of those identified in *Miller*. *See* 18 Pa.C.S. § 1102.1. Nevertheless, in the absence of a claim that such difference violates constitutional norms, we have interpreted the statutory provisions applicable to Appellant (and all others similarly situated) in accord with the dictates of the Eighth Amendment as set forth in *Miller*, as well as the Pennsylvania Legislature's intent as reflected in the relevant statutory provisions.

## II.

Given the breadth of the issues for which review was initially granted, we will also address Appellant's corollary argument that a categorical ban on the imposition of life-without-parole sentences on juvenile offenders is required by Article I, Section 13 of the Pennsylvania Constitution, which prohibits "cruel punishments." *See* Pa. Const. art. I, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."). In this regard, Appellant has not presented a fully developed analysis in accord with *Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991) (setting forth the appropriate method for determining whether a provision of the Pennsylvania Constitution provides broader protections than its federal counterpart), but, rather, refers to an *amici* brief in which the *Edmunds* factors are discussed.[4]

4. These *amici* include the Juvenile Law Center, the Defender Association of Philadelphia, and law professors Sara Jacobson, Michelle Leighton, Brian J. Foley, and Constance De La Vega.

In *Edmunds*, this Court has indicated that, in considering whether the Pennsylvania Constitution should be interpreted more expansively than the United States Constitution, the Court may consider: the text of the Constitution; the provision's history including relevant decisional law; related case law from other states; and policy considerations unique to Pennsylvania. *Id.*[5]

In terms of the relevant text, Appellant and his *amici* emphasize that the language of Article I, Section 13 (prohibiting "cruel punishment") differs from that of the Eighth Amendment (prohibiting "cruel and unusual punishment") and compare this distinction to the Michigan Constitution, which prohibits "cruel or unusual punishment," Mich. Const. art. I, § 16, and has been interpreted by that state's courts as providing broader protection than the Eighth Amendment, *see People v. Bullock*, 440 Mich. 15, 31 n. 11, 485 N.W.2d 866, 872 n. 11 (1992) ("The set of punishments which are *either* 'cruel' *or* 'unusual' would seem necessarily broader than the set of punishments which are *both* 'cruel' *and* 'unusual.'") (emphasis in original).

As to history and policy considerations, Appellant and his *amici* also aver that Pennsylvania has "a longstanding historical commitment to providing special protections for minors against the full weight of criminal punishment," Supplemental Brief for Appellant at 6, and that the purposes of the Juvenile Act "demonstrate[ ] a commitment towards fairness and consideration to the most youthful offenders," Brief for Appellant at 28 (citing 42 Pa.C.S. § 6301(b)). Similarly, Appellant observes that the Supreme Court has recognized that "juveniles

5. We recognize that this Court has previously held Article I, Section 13 to be coextensive with the Eighth Amendment in several contexts. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 73–74, 454 A.2d 937, 967 (1982), *abrogated on other grounds by Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385 (2003) (death penalty); *Commonwealth v. 5444 Spruce St.*, 574 Pa. 423, 427–28, 832 A.2d 396, 399 (2003) (excessive fines); *Jackson v. Hendrick*, 509 Pa. 456, 465 n. 10, 503 A.2d 400, 404 n. 10 (1986) (prison conditions). However, none of those cases involved juvenile offenders, who the Supreme Court has indicated are to be treated differently with respect to criminal punishment. *See, e.g., Miller,* —— U.S. at ——, 132 S.Ct. at 2470.

are categorically less culpable than adults who commit similar offenses." *See* Supplemental Brief for Appellant at 10 (citing *Miller*, —— U.S. at ——, 132 S.Ct. at 2464). This diminished level of culpability, Appellant continues, is "well established in academic literature," which has confirmed that youth affects competence and impulse control, as well as the ability to logically reason and appreciate consequences. *See id.* at 10–11 n. 12 (citations omitted). Appellant also points out that he was sentenced to life imprisonment without the possibility of parole due to a convergence of statutory provisions rather than a definitive statement from the Legislature indicating its intent to subject all juveniles convicted of first-degree murder to mandatory life sentences. *See id.* at 4 (citing 18 Pa.C.S. § 1102(a)(1); 42 Pa.C.S. § 6302; 61 Pa.C.S. § 6137(a)(1)).

We find the textual analysis provided by Appellant and his *amici* to carry little force. The purport of the argument is that this Court should expand upon the United States Supreme Court's proportionality approach, not that it should derive new theoretical distinctions based on differences between the conceptions of "cruel" and "unusual." *Cf. Trop v. Dulles*, 356 U.S. 86, 100 n. 32, 78 S.Ct. 590, 598 n. 32, 2 L.Ed.2d 630 (1958) (plurality) (suggesting that most of the judicial decisions have treated "cruel and unusual" as, essentially, an amalgam).

In terms of the history, Appellant is correct that there is an abiding concern, in Pennsylvania, that juvenile offenders be treated commensurate with their stage of emotional and intellectual development and personal characteristics. As a matter of legislative judgment, this is reflected in the salient transfer provisions of the Juvenile Act, which, historically, has been considered to be the most appropriate manner in which to make individualized determinations concerning age-related characteristics and situational factors in connection with a particular offender's suitability for treatment within the juvenile system. *See* 42 Pa.C.S. § 6322(a). While the United States Supreme Court has determined that such provisions are insufficient to mitigate an Eighth Amendment deficiency in the sentencing of underage offenders to mandatory life

without parole, nothing in the arguments presented suggests that Pennsylvania's history favors a broader proportionality rule than what is required by the United States Supreme Court.

We view Appellant's policy arguments in essentially the same light. These emphasize the trend of the United States Supreme Court towards viewing juveniles as a category as less culpable than adults, and, while we recognize this progression, Appellant does not acknowledge that there has been no concomitant movement in this Court or in the Pennsylvania Legislature away from considering murder to be a particularly heinous offense, even when committed by a juvenile. *See, e.g., Commonwealth v. Cotto*, 562 Pa. 32, 44, 753 A.2d 217, 224 (2000) (noting that "murder has always been excluded from the jurisdiction of the juvenile courts"); *Commonwealth v. Williams*, 514 Pa. 62, 72, 522 A.2d 1058, 1063 (1987), *superseded by statute on other grounds*, 42 Pa.C.S. § 6322 ("Murder is a heinous and serious crime, and the legislature's assumption that one who commits murder is in need of adult discipline and restraint is a reasonable one.").

For these reasons, the arguments presented do not persuade us that the Pennsylvania Constitution requires a broader approach to proportionality vis-á-vis juveniles than is reflected in prevailing United States Supreme Court jurisprudence.[6]

Accordingly, the decision of the Superior Court is vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

---

**6.** Certainly, "[d]etermining the appropriate sentence for a teenager convicted of murder presents grave and challenging questions of morality and social policy." *Miller*, —— U.S. at ——, 132 S.Ct. at 2477 (Roberts, C.J., dissenting, joined by Scalia, Thomas, and Alito, JJ.). Our role in establishing the direction of social policy is a limited one, however. *See, e.g., Naylor v. Twp. of Hellam*, 565 Pa. 397, 408, 773 A.2d 770, 777 (2001) (recognizing the General Assembly's superior ability to examine social policy issues and to establish appropriate substantive legal standards).

138

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice BAER files a concurring opinion.

Justice BAER, concurring.

I join in full the Majority's opinion, vacating the Superior Court's decision and remanding the case to the trial court for it to resentence Appellant based upon his individual circumstances to a sentence of life imprisonment either with the possibility of parole or without the possibility of parole for his conviction of first degree murder committed when he was a fourteen year old juvenile. As noted by the Majority, this determination is premised upon the United States Supreme Court's decision in *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), holding that a mandatory sentence of life imprisonment without the possibility of parole upon a juvenile defendant violates the Eighth Amendment's prohibition of cruel and unusual punishment.

The Majority directs that upon remand, if a trial court believes a sentence of life imprisonment with the possibility of parole is appropriate, the court shall then set the imposition of the minimum sentence before the parole board first considers the defendant, taking his circumstances into account. Maj. Op. at 133, 65 A.3d at 297. I write separately to note my belief that, for purposes of uniformity in sentencing, it would be appropriate for trial courts engaging in the task of resentencing under this circumstance to seek guidance in determining a defendant's sentence and setting a minimum term from the General Assembly's timely recent enactment in response to the U.S. Supreme Court's decision in *Miller.*

As noted by the majority, on October 25, 2012, the Governor signed a new sentencing scheme into law applicable to offenders under the age of eighteen convicted of murder. Therein, a juvenile offender under the age of fifteen years at the time of the offense may receive "a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life." 18 Pa.C.S. § 1102.1(a)(2). An offender at least fifteen but under the age of eighteen years,

may receive, "a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life." 18 Pa.C.S. § 1102(a)(1). The statute then lists multiple individualized factors that the court should consider in making its determination, including, but not limited to: the nature and circumstances of the offense; the defendant's age, mental capacity, maturity, culpability, and degree of criminal sophistication; and the success of failure of any prior rehabilitative attempts. *See* 18 Pa.C.S. §§ 1102.1(d) & (d)(7)(vii).

While the legislature specified that its enactment applied to juvenile offenders convicted on or after the date of the *Miller* decision, which would not include Appellant, I believe that trial courts conducting resentencing of defendants like Appellant, whose conviction pre-dated *Miller*, but who preserved a *Miller* claim on appeal, would be wise to follow the policy determinations made by the legislature in its recent enactment. Here, the minimum sentence applicable to Appellant, if given a sentence of life with parole, would be 25 years.

If trial courts fail to take guidance from the recent legislative enactments, the minimum sentence imposed on any given juvenile before becoming eligible for parole could vary widely. One court could immediately parole an 18 year old offender, while another court could impose a 50 year minimum sentence on a 14 year old offender. While discretionary sentencing is a valid trial court function and *Miller* specifies that individual circumstances should be considered by judges sentencing juvenile murder offenders, given that the legislature is the policy-making body for our Commonwealth and has quickly responded to *Miller* indicating the minimum sentences it views as appropriate for different aged juvenile homicide offenders, I believe courts engaging in resentencing necessitated by the *Miller* decision, should look to the newly enacted statute for guidance without abrogating their discretion as appropriate in individualized cases.[1]

---

1. My suggestion in this regard is neither an endorsement nor a judgment on the propriety or constitutionality of the new legislation directed at juvenile homicide offenders. Such issues will be for another day

once the statute is fully implemented. I merely make this suggestion recognizing that until challenged or struck, the statute represents the policy choice of the legislature on what the appropriate statutory minimum should be.