**[J-82-2018] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 14 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered September 26, 2017 at |
| | : | No. 1621 WDA 2016, affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Mercer County |
| | : | entered August 19, 2016 at No. CP- |
| ANTHONY MACHICOTE, | : | 43-CR-0001958-2003. |
| | : | |
| Appellant | : | ARGUED:  October 24, 2018 |

**DISSENTING OPINION**

**JUSTICE TODD**                              **DECIDED:  APRIL 26, 2019**

The majority's analysis is based on the premise that Appellant – who was *not* sentenced to life without the possibility of parole ("LWOP") – falls within the class of persons which *Miller*[1] and *Montgomery*[2] deemed entitled to protection.  In my view, he plainly does not, and thus is not entitled to resentencing.  Accordingly, I respectfully dissent.

*Miller* held that, under the Eighth Amendment to the United States Constitution, a sentencing court is precluded from imposing a sentence of LWOP on a juvenile unless the juvenile's crime reflects, to use one characterization, permanent incorrigibility.[3]  A

---

[1] *Miller v. Alabama*, 567 U.S. 460 (2012).

[2] *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016).

[3] As we discussed in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*"), *Miller* directed the consideration of a variety of factors, with an overriding focus:

LWOP sentence imposed without such a determination is unconstitutionally excessive, and thus a sentencing court lacks the authority to impose such a sentence. *See Montgomery*, 136 S. Ct. at 734 ("*Miller* . . . did not bar a punishment for all juvenile offenders . . . . *Miller* did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."); *Batts II*, 163 A.3d at 435 ("[I]n the absence of the sentencing court reaching a conclusion . . . that the defendant will forever be incorrigible, without any hope for rehabilitation, a life-without-parole sentence imposed on a juvenile is illegal, as it is beyond the court's power to impose."). *Montgomery* clarified that such sentences will be rare.

Here, Appellant was sentenced to 30 years to life in prison, and, accordingly, was eligible for parole. Nevertheless, the majority concludes he is entitled to resentencing because his sentence was illegal under *Miller*, *Montgomery*, and this Court's pronouncements in *Batts I* and *Batts II*. The majority holds that, "when a juvenile is exposed to a potential sentence of life without the possibility of parole the trial court must consider the *Miller* factors, on the record, prior to imposing a sentence." Majority Opinion

> The [*Montgomery*] Court clarified that *Miller* requires far more than mere consideration of an offender's age prior to imposing a life-without-parole sentence, as such a sentence "still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" Life without parole "is a disproportionate sentence for all but the rarest of children, those whose crimes reflect irreparable corruption," "permanent incorrigibility," and "such irretrievable depravity that rehabilitation is impossible," thereby excluding "the vast majority of juvenile offenders" from facing a sentence of life in prison without the possibility of parole.

*Id.* at 433 (citations omitted). The high Court in *Miller* and *Montgomery* did not impose formal factfinding requirements to make these determinations, but left that task to the States. *See Montgomery*, 136 S. Ct. at 735. As the majority discusses, pursuant to that mandate, this Court set forth such requirements in *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) ("*Batts I*"), and *Batts II.*

at 16. Citing the high Court's concern for "individualize[d] sentences for the youngest offenders who had not developmentally matured," the majority reasons that "the Superior Court's conclusion that the issue is moot because Appellant was ultimately not sentenced to life without the possibility of parole was erroneous, as it effectively nullified the procedural protection set forth in *Montgomery* and solidified by this Court in *Batts II*." *Id.* at 16.

The problem with this analysis, in my view, is that it conceives of *Miller* and *Montgomery* as principally setting forth procedural protections, protections which the majority herein deems a large class of juveniles to be constitutionally entitled – those who *might be* or *could have been* sentenced to LWOP. I interpret *Miller*, however, as announcing a substantive rule of constitutional law[4] which constrains a court's *authority* to impose a LWOP sentence, prohibiting a court from imposing a LWOP sentence on a juvenile whose crimes do not reflect incorrigibility. Indeed, the high Court's determination in *Montgomery* that *Miller* must be applied retroactively is based on this substantive-versus-procedural conclusion. *See generally Montgomery*, 136 S. Ct. at 732-36. The *Montgomery* Court went to great pains to clarify its ruling was substantive in nature:

> To be sure, *Miller*'s holding has a procedural component. *Miller* requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence. Louisiana contends that because *Miller* requires this process, it must have set forth a procedural rule. This argument, however, conflates a procedural requirement necessary to implement a substantive guarantee with a rule that "regulate[s] only the manner of determining the defendant's culpability." There are instances in which a substantive change in the law must be attended by a procedure that enables a prisoner to show that he falls within the category of persons whom the law may no

---

[4] As the high Court explained in *Montgomery*, "[s]ubstantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, 136 S. Ct. at 729.

longer punish. For example, when an element of a criminal offense is deemed unconstitutional, a prisoner convicted under that offense receives a new trial where the government must prove the prisoner's conduct still fits within the modified definition of the crime. In a similar vein, when the Constitution prohibits a particular form of punishment for a class of persons, an affected prisoner receives a procedure through which he can show that he belongs to the protected class. *See, e.g., Atkins v. Virginia*, 536 U.S. 304, 317, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (requiring a procedure to determine whether a particular individual with an intellectual disability "fall[s] within the range of [intellectually disabled] offenders about whom there is a national consensus" that execution is impermissible). Those procedural requirements do not, of course, transform substantive rules into procedural ones.

*Id.* at 734–35 (some citations omitted).

By contrast, the majority conceives of *Miller* as imposing procedural requirements on the juvenile sentencing process, as creating a constitutional right to individualized sentencing for juveniles. *See* Majority Opinion at 16 (noting that Appellant's "sentence did not evidence the required individualized consideration"). Under the majority's holding, a juvenile sentencing proceeding that fails to consider the *Miller* factors is itself constitutionally infirm, irrespective of the sentence the court imposes. *See id.* at 16-17. This conclusion ignores that, fundamentally, *Miller* proscribed a particular form of *punishment* for certain juveniles, and the sentencing hearing is merely the forum in which it is determined whether the juvenile "falls within the category of persons whom the law may no longer punish." *Montgomery*, 136 S. Ct. at 735. The "hearing does not replace but rather gives effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Id.*

Indeed, in *Montgomery*, the high Court explicitly allowed that "[g]iving *Miller* retroactive effect . . . does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State

may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."[5]    *Id.* at 736; *see also Batts II*, 163 A.2d at 440-41. If the majority's interpretation were correct – that *Miller* and *Montgomery* imposed constitutional prescriptions for juvenile sentencing *procedures*, not limitations on permissible juvenile *sentences* – the high Court logically would have mandated resentencing in every case. In any event, were Appellant's rights under *Miller* somehow violated as the majority contends, he is presently eligible for parole, thus falling within *Montgomery*'s caveat.

As a practical matter, I recognize that, for juveniles (who have not yet been sentenced) who are facing a possible sentence of LWOP, the *Miller* factors must be considered before a LWOP sentence is imposed – that is, it must first be determined whether the juvenile belongs to *Miller*'s "protected class" by reference to those factors. A court cannot impose sentence, of course, until it decides what sentence to impose, and since its authority to impose LWOP on a juvenile is limited to those juveniles reflecting incorrigibility under *Miller* and *Montgomery*, the court has to address the *Miller* factors before it imposes sentence. Here, however, Appellant has already been sentenced, and, thus, we know he does not fall within *Miller*'s "protected class" for the simple reason that he was not sentenced to LWOP. Notably, in this regard, Appellant is unlike the appellants who were afforded relief in *Miller*, *Montgomery*, *Batts I*, and *Batts II*, as each of those appellants were sentenced to LWOP.

In short, Appellant was sentenced to 30 years to life imprisonment – life *with* the possibility of parole – and neither *Miller* nor *Montgomery*, nor this Court's decisions in

---

[5] The high Court explained that "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Montgomery*, 136 S. Ct. at 736.

*Batts I* or *Batts II*, placed any constraints on the trial court's authority to impose such a sentence. Accordingly, I would conclude that Appellant is not entitled to resentencing.

Justice Dougherty joins this dissenting opinion.