**[J-53-2019] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

COMMONWEALTH OF PENNSYLVANIA,    :   No. 18 EAP 2018

            Appellee    :   Appeal from the Order of Superior

                        :   Court entered on 12/20/2017 at No.

                        :   660 EDA 2015 affirming the

            v.    :   Judgment of Sentence entered on

                        :   10/24/2014 in the Court of Common

                        :   Pleas, Philadelphia County, Criminal

MICHAEL FELDER,    :   Division at No. CP-51-CR-0014896-

                        :   2009

            Appellant    :

                        :   ARGUED: September 11, 2019

## CONCURRING OPINION

**JUSTICE DONOHUE**                              **DECIDED: February 23, 2022**

I concur in the opinion of the learned Majority. I agree that *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), requires that we reject Appellant's argument that a de facto life sentence is unconstitutional pursuant to the Eighth Amendment of the United States Constitution[1] and although not argued by the parties, it is necessary that we recognize that *Jones* removes the underpinning of our holding in *Commonwealth v. Batts*, 163 A.3d 410, 417 (Pa. 2017) ("*Batts II*"), which was predicated on now overruled Eighth Amendment jurisprudence. I write separately to recognize that this result is limited to what the Eighth Amendment requires. Today's decision does not foreclose further developments in the law as to the legality of juvenile life without parole sentences (or their

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

de facto equivalent as alleged here) under the Pennsylvania Constitution nor as to how appellate courts will review the discretionary aspects of such sentences.

Preliminarily, it is imperative to note that the only issue before the Court is whether the de facto life sentence was constitutional pursuant to the Eighth Amendment. In *Batts II*, we held that the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), mandated, among other things, a presumption against sentencing a juvenile to life without the possibility of parole which may only be rebutted beyond a reasonable doubt by proof from the Commonwealth "that the juvenile offender is permanently incorrigible and thus is unable to be rehabilitated." *Batts II*, 163 A.3d at 459. *Jones* holds that "a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under [eighteen]." *Jones*, 141 S. Ct. at 1318–19. Clearly, the portions of *Batts II* relying on an Eighth Amendment mandate of a finding of a permanent incorrigibility have been abrogated.

However, the Majority's observation that "without a substantive constitutional mooring, the procedural protections we adopted in *Batts II* cannot stand in their current, judicially-created form" addresses only the constitutional mooring with respect to the Eighth Amendment.[2] It remains an open question whether any or all components of *Batts*

---

[2] I share Justice Wecht's observation that *Batts II* "is a complex, multi-faceted decision, one that drew authority from numerous sources, establishing a series of procedural protections for juveniles. Before unilaterally deciding that no aspect of that complicated decision can remain, I would first consider the informed input of interested parties." Dissenting Op. at 8. I depart from Justice Wecht's dissenting posture only because I find that affirming the sentence as constitutionally valid under the Eighth Amendment will channel advocacy towards the open questions identified within this opinion. Also, when allowance of appeal was granted, it was not improvident.

*II* remain in place with respect to the Pennsylvania Constitution's prohibition of "cruel punishments."[3]  In the predecessor decision to *Batts II*, we rejected a claim that Article I, Section 13 provides greater protection than the Eighth Amendment.  However, the *Batts I* Court analyzed only the specific claim "that a categorical ban on the imposition of life-without-parole sentences on juvenile offenders is required by Article I, Section 13 of the Pennsylvania Constitution, which prohibits 'cruel punishments.'" *Commonwealth v. Batts*, 66 A.3d 286, 297 (Pa. 2013).  The appellant's primary argument was "that this Court should expand upon the United States Supreme Court's proportionality approach, not that it should derive new theoretical distinctions based on differences between the conceptions of 'cruel' and 'unusual.'" *Id.* at 298.

Although we rejected the proffered argument, in my view, *Batts I* does not foreclose a departure from *Jones* with respect to the separate question of **how** a trial court determines whether a particular juvenile is the rare individual who should be incarcerated for life with no possibility of parole.  Certainly, the Eighth Amendment requires only that the sentencing judge be given discretion to consider something less than that.  "[A] State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient."  *Jones*, 141 S. Ct. at 1313.  *Batts I* says nothing regarding whether Article I, Section 13 is so limited.[4]  *See Commonwealth v. Bishop,* 217 A.3d 833, 841 n.10 (Pa.

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."  PA. CONST. art. I, § 13.

[4] In *Commonwealth v. Edmunds*, this Court rejected the "good faith" exception to the exclusionary rule as announced in *United States v. Leon,* 468 U.S. 897 (1984). *Commonwealth v. Edmunds*, 586 A.2d 887, 888 (Pa. 1991).  We stated that "*Leon* … departed from a long history of exclusionary rule jurisprudence," *id.* at 892, and described *Leon* as a "reinterpretation" that "differs from the way the exclusionary rule has evolved in Pennsylvania since the decision of *Mapp v. Ohio* in 1961 and represents a shift in

2019) ("It would be untenable for a court to decide an important state constitutional question as a precedential matter in the absence of any argumentation and without any analytical treatment on its own part of the departure question[.]").  Drawing on *Batts I*, there may be a theoretical difference between the "conceptions of 'cruel' and 'unusual'" for purposes of deciding that life sentences, or de facto life sentences for juveniles, are indeed unusual.  66 A.3d at 298.  Absent directed advocacy on the separate question of whether the two provisions should be identical for all purposes, I distance myself from any implication that the issue has been resolved.

Finally, the foregoing discussion only speaks to the constitutionality of Felder's sentence.  The constitutionality of that sentence opens the door to claims that such lengthy sentences, while not unconstitutional under the Eighth Amendment, nevertheless constitute an abuse of the trial court's discretion.  The *Jones* Court was not concerned with the question of whether any individual juvenile's sentence was appropriate.  Indeed, the Court explicitly suggested that further development in that arena is left to the States.

> Importantly, like *Miller* and *Montgomery*, our holding today does not preclude the States from imposing additional sentencing limits in cases involving defendants under [eighteen] convicted of murder. States may categorically prohibit life without parole for all offenders under [eighteen]. Or States may require sentencers to make extra factual findings before sentencing an offender under [eighteen] to life without parole. Or States may direct sentencers to formally explain on the record why a life-without-parole sentence is

judicial philosophy from the decisions of the United States Supreme Court dating back to *Weeks v. United States.*  *Id.* at 897.  Presently, the Majority cites the "blistering dissent" filed in *Jones* by Justice Sotomayor and joined by Justices Breyer and Kagan, which "forcefully argued the Court was retreating from *Montgomery's* reading of *Miller*."  Majority Op. at 16 n.12.  Those criticisms do not impact the *Jones* Court's holding.  But the logical force of those arguments arguably matters a great deal insofar as the *Jones* Court's analysis of the United States Constitution is a factor in deciding whether this Court will follow when interpreting analogous provisions in the Pennsylvania Constitution.

appropriate notwithstanding the defendant's youth. States may also establish rigorous proportionality or other substantive appellate review of life-without-parole sentences. All of those options, and others, remain available to the States.

141 S. Ct. at 1323.

While the discretionary aspects of Felder's sentence are not at issue, I note that in *Batts I* then-Justice, now Chief Justice, Baer authored a concurring opinion highlighting the General Assembly's legislative response to *Miller*.

I write separately to note my belief that, for purposes of uniformity in sentencing, it would be appropriate for trial courts engaging in the task of resentencing under this circumstance to seek guidance in determining a defendant's sentence and setting a minimum term from the General Assembly's timely recent enactment in response to the U.S. Supreme Court's decision in *Miller.*

* * *

If trial courts fail to take guidance from the recent legislative enactments, the minimum sentence imposed on any given juvenile before becoming eligible for parole could vary widely. One court could immediately parole an 18 year old offender, while another court could impose a 50 year minimum sentence on a 14 year old offender. While discretionary sentencing is a valid trial court function and *Miller* specifies that individual circumstances should be considered by judges sentencing juvenile murder offenders, given that the legislature is the policy-making body for our Commonwealth and has quickly responded to *Miller* indicating the minimum sentences it views as appropriate for different aged juvenile homicide offenders, I believe courts engaging in resentencing necessitated by the *Miller* decision, should look to the newly enacted statute for guidance without abrogating their discretion as appropriate in individualized cases

*Batts I*, 66 A.3d at 300 (Baer, J., concurring).

These observations may well impact not only how appellate courts review the discretionary aspects of these purported de facto life sentences, but also the constitutionality of those sentences under Article I, Section 13. In *Batts I,* we

acknowledged that the appellant argued that the trend of the high Court, as reflected in cases like *Miller*, was to "view[] juveniles as a category as less culpable than adults[.]" We responded that the appellant "does not acknowledge that there has been no concomitant movement in this Court or in the Pennsylvania Legislature away from considering murder to be a particularly heinous offense, even when committed by a juvenile." 66 A.3d at 299. However, our General Assembly has spoken and the legislative response to *Miller* is now even more relevant because, after *Jones*, the statute could simply have been eliminated. Thus, its continued existence reflects an acknowledgement by the General Assembly that juveniles should be treated differently. That policy judgment may well be relevant to analyses of both the legality and discretionary aspects of those sentences.

Justice Todd joins this concurring opinion.

Former Justice Saylor did not participate in the decision of this matter.