Marie Scott, Normita Jackson,     :
Marsha Scaggs, Reid Evans,     :
Wyatt Evans, Tyreem Rivers,     :
                Petitioners    :
     :
     v.            :   No. 397 M.D. 2020
     :   Argued:  February 8, 2021
Pennsylvania Board of Probation    :
and Parole,     :
                Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
            HONORABLE MARY HANNAH LEAVITT, Judge (P.)
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE BROBSON             FILED:  May 28, 2021

Before the Court in our original jurisdiction are the preliminary objections of the Pennsylvania Board of Probation and Parole[1] (Board) to a "Petition for Review in the Nature of a Complaint Seeking Declaratory Judgment and Injunctive Relief" (Petition) filed by Marie Scott, Normita Jackson, Marsha Scaggs, Reid Evans, Wyatt Evans, and Tyreem Rivers (collectively, Petitioners).  As discussed further herein, Petitioners are all serving mandatory sentences of life imprisonment without parole (LWOP) for felony murder and other crimes they committed as adults, and they seek, *inter alia*, to be considered eligible for parole.  For the reasons that follow,

---

[1] We note that prior to the filing of this action, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board.  *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code (Parole Code), *as amended*, 61 Pa. C.S. §§ 6101, 6111(a).

we sustain the Board's preliminary objection asserting lack of jurisdiction and dismiss the Petition.

In the Petition, Petitioners aver that they are a group of individuals who were convicted of felony murder, among other crimes. *See* 18 Pa. C.S. § 2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principle [sic] or an accomplice in the perpetration of a felony.").[2] Marie Scott's conviction stemmed from her role as the lookout in a robbery of a gas station during which her co-defendant killed the station attendant. (Petition ¶¶ 2, 23.) Brothers Reid and Wyatt Evans were convicted after they, along with a co-defendant, robbed their victim, who died of a heart attack several hours after the incident. (*Id.* ¶¶ 3-4, 36-37.) Marsha Scaggs was convicted based upon events in which her co-defendant shot and killed a man whom they suspected was a police informant seeking to purchase drugs, after Scaggs refused to do so at her co-defendant's command. (*Id.* ¶¶ 5, 51.) Normita Jackson was convicted following her participation in a robbery in which she invited the victim to her home, where her co-defendant ultimately shot and killed the victim. *(Id.* ¶¶ 6, 66.) Finally, Tyreem Rivers was convicted after he robbed an elderly victim, who died weeks later of pneumonia she contracted in the hospital while being treated for injuries sustained when she fell during the robbery. (*Id.* ¶¶ 7, 78.)

As a result of their convictions, each Petitioner is serving a mandatory LWOP sentence, or, as Petitioners at times put it, "a mandatory death-by-incarceration sentence." (*Id.* ¶ 18.) In support of their characterization of their sentences, Petitioners point to Section 1102(b) of the Crimes Code, 18 Pa. C.S. § 1102(b),

---

[2] The Petition indicates that Marie Scott's conviction occurred prior to 1974, when felony murder was classified as first degree murder in Pennsylvania. (Petition at 3 n.1 and 9 n.3.)

2

which provides that "a person who has been convicted of murder of the second degree . . . shall be sentenced to a term of life imprisonment," and Section 6137(a)(1) of the Parole Code, 61 Pa. C.S. § 6137(a)(1), which provides that "[t]he [B]oard may . . . release on parole any inmate to whom the power to parole is granted to the [B]oard by this chapter, except an inmate condemned to death or serving life imprisonment."[3] (*See* Petition ¶ 18.)

Petitioners' convictions were obtained decades ago, and the time each has served in incarceration ranges from 23 to 47 years. (*Id.* ¶¶ 2-7.) Their sentences notwithstanding, on May 19, 2020, Petitioners each submitted a parole application with the Board seeking parole review. (*Id.* ¶ 19.) The Board denied Petitioners' applications on the basis that Petitioners were serving life sentences and, therefore, were not eligible for parole consideration pursuant to Section 6137(a) of the Parole Code. (*Id.* ¶ 20.) Following the Board's denial of Petitioners' parole applications, Petitioners filed the Petition with this Court on July 8, 2020, raising two claims for relief under Article I, Section 13 of the Pennsylvania Constitution, Pa. Const. art. I, § 13 (providing that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted").

In their first claim, titled "Violation of Right to Be Free from Cruel Punishments Under Article I, [Section] 13," Petitioners assert that LWOP sentences

_____

[3] Petitioners do not specifically cite Section 6137(a)(1) of the Parole Code in paragraph 18 or any other paragraph of the Petition. Rather, the Petition makes general references to "Section 6137" and "Section 6137(a)" throughout, including a reference to "Section 6137" in paragraph 18. It is clear, however, from Petitioners' brief to this Court that Section 6137(a)(1) is the pertinent provision herein. *See, e.g.*, Petitioners' Brief at 10 (explaining that "61 Pa. C.S. § 6137(a)(1), which prohibits individuals serving life sentences from parole eligibility, . . . is the statutory provision they challenge"). Thus, to the extent that we address Petitioners' arguments at times using general references to Section 6137 or Section 6137(a) as set forth in the Petition or as used by the parties herein, we are mindful that Petitioners specifically take issue with Section 6137(a)(1).

3

have been recognized as among the most severe forms of punishment; are disproportionate; fail to serve legitimate penological interests when applied to defendants who have lessened culpability because they did not kill or intend to kill as part of their crime of conviction; and constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.[4] (Petition ¶¶ 135-37.) Claiming that Article I, Section 13 of the Pennsylvania Constitution "provides at least as much protection as the Eighth Amendment," Petitioners further submit that "[their LWOP] sentences for felony murder convictions, where they did not kill or intend to kill as part of their crime of conviction, constitute cruel punishment in violation of Art[icle] I, Section 13." (*Id.* ¶¶ 134, 138.) Additionally, Petitioners assert that the Board violates Article I, Section 13 of the Pennsylvania Constitution by enforcing Section 6137 of the Parole Code, thereby denying them the opportunity to be considered for parole due to their life sentences and "effectuating their death-by-incarceration."[5] (*Id.* ¶¶ 133, 139.)

In their second claim, titled "Violation of Right to Be Free from Cruel Punishments Under Article I, [Section] 13— *Edmunds* Factors," Petitioners again assert that "[their] death-by-incarceration sentences for felony murder convictions, where they did not kill or intend to kill as part of their crime of conviction,

---

[4] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] At this point, we observe that a significant portion of the 40-page Petition is rooted in the case law pertaining to the sentencing of juveniles, for whom mandatory LWOP sentences have been held unconstitutional because of, *inter alia*, their "lessened culpability." *Miller v. Alabama*, 567 U.S. 460, 465 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). We further note that, following *Miller*, the United States Supreme Court issued its decision in *Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016), holding that *Miller* announced a new substantive rule that applies retroactively in state collateral review proceedings. Petitioners, here, were not juveniles at the time they committed their crimes.

4

constitute cruel punishments in violation of Art[icle] I, [Section] 13." (*Id.* ¶ 143.) While Petitioners base their first claim on the argument that the Pennsylvania Constitution's protections are coextensive with the Eighth Amendment to the United States Constitution, Petitioners base their second claim on the assertion that "Art[icle] I, [Section] 13 provides greater protection than the Eighth Amendment" under the factors set forth in *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991),[6] and in light of important policy considerations attendant to "death-by-incarceration sentences in Pennsylvania." (*Id.* ¶¶ 141-42.) As they did in their first claim, Petitioners again assert in their second claim that the Board violates Article I, Section 13 by enforcing Section 6137 of the Parole Code, thereby denying them the opportunity to be considered for parole due to their life sentences and "effectuating their death-by-incarceration." (*Id.* ¶¶ 140, 144.)

In their prayer for relief, Petitioners seek a declaration from this Court that Section 6137 of the Parole Code is "unconstitutional under the Pennsylvania Constitution as applied to individuals serving life sentences for felony murder convictions." (*Id.* ¶ 145.) Petitioners also seek an evidentiary hearing to develop a record with respect to whether application of Section 6137 to those who did not take a life or intend to take a life is unjustified. (*Id.* ¶¶ 147-48.) Petitioners further request that the Court order the Board "to develop plans for review of these cases, including the minimum number of years that must be served prior to consideration for parole, the criteria governing such parole reviews, and the procedural protections that will be in place to ensure a meaningful opportunity for release." (*Id.* ¶ 146.) Finally,

---

[6] "Under *Edmunds*, the party arguing in favor of distinct or greater rights under the Pennsylvania Constitution should analyze: (1) the text of the Pennsylvania constitutional provision; (2) the history of the provision, including Pennsylvania case-law; (3) related case-law from other states; and (4) policy considerations unique to Pennsylvania." *Commonwealth v. Smith*, 836 A.2d 5, 15 n.10 (Pa. 2003) (quoting *Edmunds*, 586 A.2d at 895).

5

Petitioners request an order directing the Board to review each of Petitioners' cases for consideration of parole. (*Id.* ¶ 149.)

As noted, the Board filed preliminary objections to the Petition, asserting that the Court lacks jurisdiction over the matter and that the Board is an improper party. The Board also demurs on two bases, asserting that Petitioners' challenge is stale and their claims fail on the merits.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

The Board first argues that this Court lacks jurisdiction over Petitioners' claims pursuant to Section 761(a)(1)(i) of the Judicial Code, 42 Pa. C.S. § 761(a)(1)(i), which provides that this Court does not have jurisdiction over "[a]ctions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the [C]ourt." The Board submits that Petitioners are challenging the legality of their sentences and, thus, Petitioners' claims are cognizable under the Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-46. The Board further argues

that, to the extent that Petitioners purport to limit their challenge to Section 6137(a) of the Parole Code and their ineligibility for parole, Section 6137(a) makes clear that eligibility for parole is itself a function or element of a criminal sentence, as it is determined by the court at the time of sentencing. *See* 61 Pa. C.S. § 6137(a)(3) ("The power to parole granted under this section to the [B]oard may not be exercised in the [B]oard's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence or by the Board of Pardons in a sentence which has been reduced by commutation.").

The Board further asserts that Section 1102 of the Crimes Code and Section 6137 of the Parole Code are inextricably intertwined, rendering Petitioners' sentences mandatory LWOP sentences. The Board submits that Petitioners' constitutional challenges to their sentences are cognizable under the PCRA and that Petitioners are making an improper attempt at forum shopping given the manner in which our courts have addressed similar challenges in the context of cases involving both juvenile offenders and adult offenders—including the lead petitioner herein. *See Commonwealth v. Scott* (Pa. Super., No. 2246 EDA 2016, filed Dec. 20, 2017) (*Scott I*) (adopting PCRA court's decision rejecting Marie Scott's reliance on United States Supreme Court's decisions in *Miller* and *Montgomery*, regarding mandatory LWOP sentences for juveniles, to satisfy exception to PCRA time-bar, as she was 19 years old at time of murder).

Petitioners counter that the Board mischaracterizes their claim, which they essentially contend is limited to a challenge to Section 6137(a)(1) of the Parole Code and the Board's enforcement of that provision. Petitioners argue that they are not challenging Section 1102(b) of the Crimes Code or their sentences, nor are they seeking release from custody. Rather, they challenge a condition on their sentences

7

(*i.e.*, lifetime parole preclusion), which is effectuated by Section 6137(a)(1) and the Board's enforcement thereof, and they seek "mere parole eligibility." (Petitioners' Brief at 11.) Petitioners maintain that, viewed in this light, their claims are not cognizable under the PCRA or in a habeas corpus proceeding and, if successful, would have no impact on their underlying "life" sentences. Thus, according to Petitioners, the Petition does not constitute one in the nature of an application for habeas corpus or PCRA relief falling outside of our jurisdiction.

Preliminarily, we observe that it is undisputed that this Court is vested with original jurisdiction over "all civil actions or proceedings . . . [a]gainst the Commonwealth government." 42 Pa. C.S. § 761(a)(1). It is also undisputed that this general rule is subject to certain exceptions, including when the action or proceeding is "in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the [C]ourt." 42 Pa. C.S. § 761(a)(1)(i). The crux of the disagreement between the parties concerning jurisdiction thus centers on whether the Petition falls under the general rule or the exception.

In answering this question, we find instructive our Supreme Court's decision in *Stackhouse v. Commonwealth*, 832 A.2d 1004 (Pa. 2003) (plurality). There, the plaintiff filed a three-count complaint in the Court of Common Pleas of Dauphin County, naming the Pennsylvania State Police (PSP), State Police Commissioner, and Deputy Commissioner as defendants, and demanding a jury trial. *Id.* at 1005-06. In her complaint, the plaintiff maintained that PSP employees improperly delved into her personal affairs during an internal investigation performed in connection with her application for a job promotion. *Id.* at 1006. She further asserted that the Commissioner and Deputy Commissioner failed to ensure that the employees were

properly trained to conduct the investigation and that the Commissioner failed to take corrective action once notified of the issue. *Id.*

In Count I of her complaint, the plaintiff sought relief against PSP, as well as the Commissioner and Deputy Commissioner in their official capacities, in the form of a declaration that her privacy and reputational interests had been harmed during the investigation. *Id.* She also sought an injunction restraining those parties from using the private information obtained for any purpose or from subjecting her to a similar investigation in the future. *Id.* In Counts II and III of the complaint, the plaintiff sought monetary damages and attorneys' fees from the Commissioner for alleged constitutional deprivations undertaken outside the scope of his authority, resulting in emotional distress and injury to the plaintiff's reputation. *Id.*

On appeal, the Supreme Court was tasked with determining whether original jurisdiction over the plaintiff's claims lay in this Court or the court of common pleas. The Supreme Court first observed that this Court generally "has original jurisdiction in cases asserted against 'the Commonwealth government, including any officer thereof, acting in his official capacity.'" *Id.* at 1007 (quoting 42 Pa. C.S. § 761(a)(1)). The Supreme Court continued by explaining that the general rule was subject to particular exceptions, with the exception set forth at Section 761(a)(1)(v) of the Judicial Code being the relevant exception for purposes of that case. *See* 42 Pa. C.S. § 761(a)(1)(v) (providing that this Court lacks jurisdiction over "actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass").

The Supreme Court continued by explaining that, in *Balshy v. Rank*, 490 A.2d 415 (Pa. 1985), it "held that all actions against the Commonwealth or its officers acting in their official capacity for money damages based upon tort liability fall outside the scope of the Commonwealth Court's original jurisdiction and are properly commenced in the courts of common pleas." *Stackhouse*, 832 A.2d at 1008. In *Fawber v. Cohen*, 532 A.2d 429 (Pa. 1987), however, the Supreme Court subsequently held "that the original jurisdiction of the common pleas courts over actions against state officials for civil rights violations does not encompass actions seeking equitable or declaratory relief, as such actions are not in the nature of a trespass." *Stackhouse*, 832 A.2d at 1008.

Emphasizing the context of the *Fawber* decision, wherein the plaintiffs "sought a declaration that a particular administrative regulation was unconstitutional, as well as an order precluding its enforcement," the *Stackhouse* Court found the matter before it to be distinguishable:

> Here, [the plaintiff] does not seek to preclude enforcement of an allegedly invalid administrative regulation, or a judicial declaration concerning its validity. Rather, her request for judicial redress stems from a series of events specific to a single departmental inquiry, and is explicitly predicated upon the lack of any regulatory or other legal foundation for such actions. Thus, while couched in constitutional terms, [the plaintiff]'s cause of action as stated in Count I rests upon the same allegations of defamation and invasion of privacy as asserted in Counts II and III. The sum and substance of [the plaintiff's] complaint, then, is that her privacy and reputational interests were invaded when state police officials unlawfully delved into her intimate inter-personal relationships during an internal affairs investigation, and that she is entitled to compensation accordingly. In these circumstances, we do not believe the inclusion of a count for declaratory or injunctive relief premised upon the same events can properly be understood to transform the complaint from one sounding in trespass into the type of matter contemplated by *Fawber*, or by the

10

Legislature, as belonging within the Commonwealth Court's original jurisdiction.

*Id.* Significantly, the Supreme Court continued by observing:

> More generally, permitting jurisdictional questions to turn solely upon the styling of claims within a complaint would arguably permit forum shopping through pleading, *cf.* [*Mut.*] *Benefit Ins. Co. v. Haver*, . . . 725 A.2d 734, 745 ([Pa.] 1999) ("[T]o allow the manner in which the complainant frames the request for redress to control in a case . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies."), and indeed, courts in this Commonwealth and elsewhere have traditionally looked to the substance rather than the form of the complaint to determine matters of jurisdiction. *See, e.g.*, *Konhaus v. Lutton*, . . . 344 A.2d 763, 765 ([Pa. Cmwlth.] 1975) (explaining that the substance rather than the form of an action must be examined to determine if, in reality, it is one against an officer of the Commonwealth acting in his official capacity and within the jurisdiction of the Commonwealth Court); *Fennell v. Guffey*, 155 Pa. 38, 40 . . . (1893) (*per curiam*) (holding that the Allegheny county court had subject matter jurisdiction because, while the complaint was "in form assumpsit," it was in substance an action of covenant upon a lease); *Johnston v. Stein*, . . . 562 N.E.2d 1365, 1366 ([Mass. App. Ct.] 1990) (indicating that the question of tribunal jurisdiction is resolved by analyzing the "core" of complaint). Therefore, we hold that, inasmuch as the core of [the plaintiff]'s complaint is an action in trespass, original jurisdiction lies in the court of common pleas notwithstanding the injunctive/declaratory label attached to Count I.

*Id.* at 1008-09.

With the above pronouncements in mind, we turn to the Petition. As noted, the Petition sets forth two claims for relief. Under the first claim, Petitioners assert that "[LWOP] sentences . . . constitute cruel and unusual punishment in violation of the Eighth Amendment" to the United States Constitution "when applied to defendants who did not kill or intend to kill as part of their crime of conviction and thus have lessened culpability." (Petition ¶ 137.) Petitioners further claim that "[their LWOP] sentences for felony murder convictions, where they did not kill or

11

intend to kill as part of their crime of conviction, constitute cruel punishment in violation of Art[icle] I, [Section] 13" of the Pennsylvania Constitution, "which provides at least as much protection as the Eighth Amendment" to the United States Constitution. (Petition ¶ 138.) Under their second claim, they likewise assert that their "death-by-incarceration sentences for felony murder convictions, where they did not kill or intend to kill as part of their crime of conviction, constitute cruel punishments in violation of Art[icle] I, [Section] 13." (*Id.* ¶ 143.) These averments squarely challenge the constitutionality of Petitioners' sentences.

We additionally observe that, prior to setting forth their two claims for relief, Petitioners dedicate a significant portion of their Petition to the factual and legal framework supporting those claims, much of which is directed to the imposition of mandatory LWOP sentences generally and their sentences in particular. For example, Petitioners aver that Pennsylvania "is an outlier both within the United States and globally in the imposition of death-by-incarceration sentences," and they claim that the population of "people serving death-by-incarceration sentences in Pennsylvania" is plagued by racial disparities and public health concerns due to aging. (Petition ¶¶ 9, 15-17.) As noted, Petitioners rely upon *Miller*, among other cases, to assert that their "sentences are demonstrably disproportionate and excessive," and even go so far as to call upon this Court to analyze the constitutionality of their sentences. (*See* Petition ¶¶ 96-97 (averring that "in analyzing the constitutionality of [Petitioners'] death-by-incarceration sentences, this Court must" assess various factors)); (*see also id.* ¶ 111 (explaining that "[Petitioners] are prepared to demonstrate at an evidentiary hearing [that their] sentences are unconstitutionally excessive in light of Eighth Amendment jurisprudence," and arguing that *Miller* and other cases "compel a prohibition on

12

[death-by-incarceration] sentences for felony murder under Pennsylvania's cruel punishments clause").)

Thus, to the extent Petitioners contend that they are not attacking their sentences, their argument is belied by the Petition itself. As such, their challenges are in the nature of claims seeking post-conviction relief. In this respect, Section 9542 of the PCRA, 42 Pa. C.S. § 9542, provides: "This subchapter provides for an action by which . . . persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis."

Nonetheless, in an effort to invoke our original jurisdiction, Petitioners have presented their sentencing claims in the context of a "Petition for Review in the Nature of a Complaint Seeking Declaratory Judgment and Injunctive Relief." In furtherance of this objective, Petitioners have asserted a challenge to the Board's enforcement of Section 6137 of the Parole Code in the context of each of their two claims, in addition to the averments explicitly challenging their sentences. (*See* Petition ¶¶ 133, 139-40, 144.) They have likewise included discrete assertions that the Board's enforcement of Section 6137 constitutes cruel punishment in the averments leading up to those two claims. (*See, e.g.*, *id.* ¶ 95 (asserting that Board's enforcement of Section 6137 "violates the Pennsylvania Constitution's prohibition on cruel punishments").) Additionally, Petitioners have limited their requests for redress on the face of their Petition to declaratory and injunctive relief, (*see id.* ¶¶ 145-49), including "mere parole eligibility." (Petitioners' Brief at 11).

13

While these circumstances at first blush appear to support Petitioners' claim that original jurisdiction lay with this Court, we agree with the Board that Petitioners have fashioned the Petition in this manner in a thinly veiled attempt to forum shop through pleading, which we will not countenance. *See Stackhouse*, 832 A.2d at 1008. In so doing, we note that this Court has already rejected a challenge remarkably similar to this one on the basis that it constituted a collateral attack on a criminal sentence. In *Hill v. Commonwealth* (Pa. Cmwlth., No. 152 M.D. 2008, filed September 26, 2008),[7] the petitioner Hill filed a complaint in our original jurisdiction, maintaining that he was serving a life sentence for second degree murder. In his complaint, he asserted a challenge to Section 1102 of the Crimes Code and "Section 21 of what is popularly called the 'Parole Act,'"[8] which preceded Section 6137 of the Parole Code and likewise prohibited parole for an inmate serving a life sentence; Hill challenged that those sections violated various provisions of the Pennsylvania Constitution. *Hill*, slip op. at 2-4. Hill requested that the Court grant him declaratory relief and enjoin the Commonwealth from enforcing Section 1102 of the Crimes Code and former Section 21 of the Parole Act. *Id.* at 6. The Commonwealth of Pennsylvania and other named respondents filed preliminary objections, demurring on the basis that the PCRA provided the only means by which Hill could attack his criminal sentence. *Id.* at 4-5.

This Court agreed that Hill was attempting to collaterally attack his sentence and parole eligibility, which fell within the purview of the PCRA. *Id.* at 6. While

---

[7] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

[8] Act of August 6, 1941, P.L. 861, *as amended*, added by the Act of August 24, 1951, P.L. 1401, *formerly* 61 P.S. § 331.21, repealed by the Act of August 11, 2009, P.L. 147.

Hill alleged that he sought "merely to challenge the constitutionality of Section 1102 of the Crimes Code and [former] Section 21 of the Parole Act" and argued "that the relief he [sought] only stem[med] from this challenge," we held:

> [I]t is clear from examining Section 1102 of the Crimes Code, which provides for a life sentence for second[]degree murder, and Section 21 of the Parole Act, which provides that a convict may not be paroled if he is serving a life sentence, that Hill is attacking his ineligibility for parole, which stems from his sentence of life imprisonment. This is a collateral attack on his sentence and is, therefore, an attack which must be brought under the PCRA and not as a complaint for declaratory judgment and injunctive relief in this Court's original jurisdiction.

*Id.* at 6-7.

Although decided in the context of a demurrer,[9] the analysis in *Hill* supports our conclusion that this Court lacks original jurisdiction over Petitioners' claims pursuant to Section 761(a)(1)(i) of the Judicial Code. That is, here, while Petitioners purport to limit their challenge only to the constitutionality of Section 6137 of the Parole Code and seek "mere parole eligibility," they are collaterally attacking their sentences. They may not collaterally attack their sentences by using a civil action in this Court seeking declaratory and injunctive relief. *See also Guarrasi v. Scott*, 25 A.3d 394, 402 (Pa. Cmwlth. 2011) (observing that plaintiff "may not use a civil action for declaratory judgment in our original jurisdiction to collaterally attack the legality of his criminal proceedings" and reiterating that "[t]he PCRA is the sole means by which . . . persons serving illegal sentences may obtain collateral relief") (internal quotation marks and citations omitted).

---

[9] The *Hill* Court observed that it ordered Hill's complaint to be "treated as a Petition for Review addressed to this Court's original jurisdiction pursuant to 42 [Pa. C.S.] § 761 and Pa[.] R.A.P. 1502." *Hill*, slip op. at 1 n.1. The issue of jurisdiction was not raised or otherwise discussed in the opinion.

Further, even if we were to accept Petitioners' characterization of their claim as one challenging only Section 6137(a)(1) of the Parole Code as divorced from Section 1102(b) of the Crimes Code and their "life" sentences, their success on that claim would not result in the ultimate relief they seek: parole eligibility. This is because, while Section 6137(a)(1) prohibits parole eligibility for inmates "serving life imprisonment," Section 6137(a)(3) of the Parole Code further prohibits parole consideration for inmates who have not served their minimum sentences as set by the sentencing court. *See* 61 Pa. C.S. § 6137(a)(3) ("The power to parole granted under this section to the [B]oard may not be exercised in the [B]oard's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence or by the Board of Pardons in a sentence which has been reduced by commutation."). Moreover, this Court has observed that a sentence of life imprisonment imposed under Section 1102(b) of the Crimes Code is a mandatory minimum sentence. *See Castle v. Pa. Bd. of Prob. & Parole*, 554 A.2d 625, 628 (Pa. Cmwlth. 1989) (concluding that Section 1102(b)'s omission of the "words 'not less than' or 'at least' does not render [an inmate's] sentence something other than a mandatory minimum").

Thus, Petitioners' "life" sentences, which they purport not to challenge here, preclude Petitioners' eligibility for parole pursuant to Section 6137(a)(3) of the Parole Code regardless of Section 6137(a)(1)'s applicability. Further, if we were to direct the Board to consider Petitioners' eligibility for parole despite their unchallenged "life" sentences, granting such relief would, in effect, equate to this Court and/or the Board imposing new minimum sentences upon Petitioners. Neither this Court nor the Board, however, can alter Petitioners' criminal sentences; that task

16

is for the courts of common pleas.[10] These considerations lend additional support to our conclusion that, notwithstanding their styling of the Petition and arguments to the contrary, Petitioners are indeed challenging their sentences and seeking sentencing relief.

The above notwithstanding, the dissent views Petitioners' challenge in accordance with the limited way in which Petitioners seek to portray it (and not as a challenge to Petitioners' sentences), thereby concluding that this Court has jurisdiction over Petitioners' claims. In so doing, the dissent observes that Petitioners' claims cannot be raised in PCRA petitions in light of that statute's timeliness restrictions and the alleged recent factual developments in Petitioners' cases. While we disagree with the dissent's position on the nature of Petitioners' challenge for the reasons stated, we also note the following regarding Petitioners' eligibility for PCRA relief.

---

[10] Indeed, in *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) (*Batts I*), our Supreme Court first addressed the import of *Miller* in the context of a direct appeal from the imposition of a mandatory LWOP sentence upon a juvenile convicted of first degree murder prior to *Miller's* holding. The Supreme Court held that the remedy for the juvenile and those like him was resentencing where, if the sentencing court found an LWOP sentence to be inappropriate upon evaluation, the juvenile would be "subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a) [of the Crimes Code], accompanied by a minimum sentence determined by the common pleas court upon resentencing, [thereby] striking the prohibition against paroling an individual sentenced to serve life in prison in Section 6137(a)(1) [of the Parole Code] as applied to th[o]se offenders." *Commonwealth v. Batts*, 163 A.3d 410, 421 (Pa. 2017) (*Batts II*) (quoting *Batts I*, 66 A.3d at 297) (internal quotation marks and citation omitted), *abrogated on other grounds*, *Jones v. Mississippi*, 141 S. Ct. 1307 (2021). "Thus, a court may sentence affected defendants to a minimum term-of-years sentence and a maximum sentence of life in prison, exposing these defendants to parole eligibility upon the expiration of their minimum sentences." *Id.* at 451 (relying upon 61 Pa. C.S. § 6137(a)(3)). Petitioners essentially seek that same relief, though they omit a request for "resentencing" and instead ask for "mere parole eligibility" in addition to a declaration that Section 6137 is unconstitutional.

17

"To be timely, a PCRA petition, including a second or subsequent petition, must be filed within one year of a judgment of sentence becoming final." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017) (citing 42 Pa. C.S. § 9545(b)(1)). This time bar, which is jurisdictional in nature, can be overcome only if a PCRA petitioner pleads and proves that one of the three statutory timeliness exceptions applies.[11] *Id.* Notably, "[a]lthough [the] legality of [a] sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto." *Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999).

One of the PCRA's timeliness exceptions is known as the "newly-discovered facts" exception; it requires that a PCRA petitioner demonstrate that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa. C.S. § 9545(b)(1)(ii). Insofar as Petitioners' claims—which we again view as claims cognizable under the PCRA—are premised upon "new" facts such as the COVID-19 pandemic, their advanced ages, or circumstances demonstrating that Petitioners' continued incarceration no longer serves its penological purpose, those facts would properly be considered in determining whether Petitioners have overcome the PCRA's

---

[11] Additionally, PCRA petitions invoking one of the exceptions must be filed within a certain amount of time of the relevant event that triggered the filing of the petition. *See Spotz*, 171 A.3d at 679 n.6. Section 9545(b)(2) of the PCRA previously required petitioners to file a petition raising the applicability of one of the timeliness exceptions within 60 days from the date that the claim could have been raised; that provision was amended to extend the 60-day deadline to one year. *See* 42 Pa. C.S § 9545(b)(2). While the amendment became effective on December 24, 2018, it applies only to claims arising on December 24, 2017, or thereafter. *See* Act of October 24, 2018, P.L. 894.

one-year jurisdictional time bar through satisfaction of the timeliness exception set forth in Section 9545(b)(1)(ii).[12]

As a more general matter, we are careful to note that whether a PCRA petitioner is time-barred from bringing a claim that, substantively, is cognizable under the PCRA is immaterial to whether this Court has jurisdiction over that same claim. If it were the case that this Court had jurisdiction over claims that were time-barred under the PCRA, then PCRA petitioners would always bring those claims before this Court, and we would adjudicate them, based on that reasoning. Section 761(a)(1) of the Judicial Code provides, however, that we lack jurisdiction over "actions or proceedings in the nature of applications for . . . post-conviction

---

[12] Another PCRA timeliness exception is the so-called "newly-recognized constitutional right" exception; it requires a petitioner to demonstrate that "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa. C.S. § 9545(b)(1)(iii). The Superior Court, however, has repeatedly rejected attempts by PCRA petitioners, who committed crimes as adults that resulted in mandatory LWOP sentences, to avail themselves of that exception through extension of *Miller* and *Montgomery*[ *v. Louisiana*]. *See, e.g.*, *Commonwealth v. Lee*, 206 A.3d 1, 11 (Pa. Super.) (*en banc*) (holding that "age is the sole factor in determining whether *Miller* applies to overcome the PCRA time-bar" and "declin[ing] to extend its categorical holding" to PCRA petitioner, who was over 18 at time she committed second degree murder but argued that she could not form requisite intent due to underdeveloped brain), *appeal denied*, 218 A.3d 851 (Pa. 2019); *Commonwealth v. Montgomery*, 181 A.3d 359, 361, 366 (Pa. Super.) (*en banc*) (holding that "the new rule of constitutional law announced in *Miller*, and held retroactive by *Montgomery*, does not apply in this case" because PCRA petitioner was 22 years old at time of offense, and further rejecting petitioner's claim as raised under Equal Protection Clause of Fourteenth Amendment as another "attempt to extend *Miller*'s holding"), *appeal denied*, 190 A.3d 1134 (Pa. 2018); *Commonwealth v. Woods*, 179 A.3d 37, 44 (Pa. Super. 2017) (explaining that "the right recognized by *Miller* and held to be retroactive in *Montgomery* does not provide [the petitioner] a basis for relief from the PCRA time-bar" because he "was over eighteen years old when he committed the murder"); *Commonwealth v. Furgess*, 149 A.3d 90, 94 (Pa. Super. 2016) ("[The p]etitioners who were older than 18 at the time they committed murder are not within the ambit of the *Miller* decision and therefore may not rely on that decision to bring themselves within the time-bar exception in Section 9545(b)(1)(iii)."). As noted by the Board and as discussed above, Marie Scott is among these PCRA petitioners. *See Scott I.*

relief," regardless of whether a court of proper jurisdiction is precluded from exercising it on timeliness grounds. To the extent that the dissent can be read to suggest otherwise, we respectfully disagree.

In sum, although styled as a "Petition for Review in the Nature of a Complaint Seeking Declaratory Judgment and Injunctive Relief" in form, it is apparent that Petitioners are launching a collateral attack on their sentences in substance. As the Petition is "in the nature of an application seeking . . . post conviction relief" and there are no matters pending in our appellate jurisdiction that are ancillary to the Petition, this Court lacks jurisdiction over the Petition pursuant to Section 761(a)(1) of the Judicial Code.[13] Thus, we sustain the Board's preliminary objection raising lack of jurisdiction and dismiss the Petition.[14]

P. KEVIN BROBSON, President Judge

---

[13] Insofar as Petitioners are unable to obtain PCRA relief, we note that they are also free to seek relief via other avenues, such as through the state's commutation system or legislative amendment.

[14] Section 5103(a) of the Judicial Code, 42 Pa. C.S. § 5103(a), provides that this Court shall not dismiss an erroneously filed matter for lack of jurisdiction, but shall transfer the case to the proper tribunal. Original jurisdiction over the Petition would lie in the court(s) of common pleas. *See* 42 Pa. C.S. § 9545(a) ("Original jurisdiction over a proceeding under this subchapter shall be in the court of common pleas."); Pa. R. Crim. P. 901(B) ("A proceeding for post-conviction collateral relief shall be initiated by filing a petition and 3 copies with the clerk of the court in which the defendant was convicted and sentenced."). Notwithstanding, in view of the true nature of Petitioners' challenge, we further agree with the Board that it is not a proper party to the action. Rather, it is the Commonwealth that participates in post-conviction proceedings. *See* Pa. R. Crim. P. 902(A) ("A petition for post-conviction collateral relief shall bear the caption, number, and court term of the case or cases in which relief is requested . . . ."); Pa. R. Crim. P. 903(A)-(B) (explaining that, upon receipt of PCRA petition, clerk of courts shall "make a docket entry, at the same term and number as the underlying conviction and sentence . . . and . . . place the petition in the criminal case file," then "transmit a copy of the petition to the attorney for the Commonwealth"); Pa. R. Crim. P. 906(A) (providing generally that attorney for Commonwealth may elect to file answer or must do so if ordered by court). As the Board is the only named respondent, dismissal is appropriate.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marie Scott, Normita Jackson,     :
Marsha Scaggs, Reid Evans,      :
Wyatt Evans, Tyreem Rivers,      :
                 Petitioners      :
                                   :
         v.                    :    No. 397 M.D. 2020
                                     :
Pennsylvania Board of Probation   :
and Parole,                       :
                   Respondent    :

# **O R D E R**

AND NOW, this 28th day of May, 2021, the preliminary objection raising lack of jurisdiction filed by the Pennsylvania Board of Probation and Parole is hereby SUSTAINED, and the "Petition for Review in the Nature of a Complaint Seeking Declaratory Judgment and Injunctive Relief" is DISMISSED.

_____
P. KEVIN BROBSON, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marie Scott, Normita Jackson,    :
Marsha Scaggs, Reid Evans,    :
Wyatt Evans, Tyreem Rivers,    :
                Petitioners   :
    :
        v.           :   No. 397 M.D. 2020
    :   ARGUED:  February 8, 2021
Pennsylvania Board of Probation   :
and Parole,    :
                Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE MARY HANNAH LEAVITT, Judge (P)
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**DISSENTING OPINION**
**BY SENIOR JUDGE LEADBETTER**         **FILED:  May 28, 2021**

Respectfully, I dissent.  I do not read the Complaint in this case as an attack on Petitioners' convictions or sentences, but rather as what it purports to be: a facial and as applied Eighth Amendment challenge to the provisions of the Prisons and Parole Code,[1] which require Petitioners' continued incarceration long after it has ceased to serve its original penological purpose and, in light of the COVID-19 pandemic and their advanced ages, puts their lives at risk.  These claims plainly cannot be raised in petitions filed pursuant to the Post Conviction Relief Act[2] because such petitions have been time-barred for many years and when they were timely, the pled circumstances which now give rise to potential Eighth Amendment claims did not exist.  I cannot express any opinion as to whether Petitioners can prevail on these claims, only that we have jurisdiction to address them and should

---

[1] 61 Pa.C.S. §§ 101-6309.

[2] 42 Pa.C.S. §§ 9541-46.

await the development of a factual record and full legal briefing.  Accordingly, I would overrule the preliminary objections.

                           _____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita