**[J-60-2024] [MO:Todd, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered June 13, |
| | : | 2023, at No. 1008 WDA 2021, |
| v. | : | Affirming the Order of the Court of |
| | : | Common Pleas of Allegheny County |
| | : | entered December 19, 2016, at No. |
| DEREK LEE, | : | CP-02-CR-0016878-2014. |
| | : | |
| Appellant | : | ARGUED: October 8, 2024 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE BROBSON**                                  **DECIDED: MARCH 26, 2026**

Appellant Derek Lee (Lee) and another man, armed with guns and a taser, entered uninvited into the home of Leonard Butler (Victim) on October 14, 2014. Both men forced Victim into the basement of the home, which Victim shared with his 9-year-old son and his son's mother, and demanded that Victim give them his money. While in the basement, Lee pistol whipped Victim in the face and stole Victim's watch. Lee then returned upstairs, while the other man remained in the basement with Victim. Following a struggle between the other man and Victim over the gun, the gun discharged, killing Victim. For this, a jury convicted Lee of murder in the second degree—*i.e.*, felony murder, defined in Section 2502(b) of the Crimes Code as criminal homicide when "committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa. C.S. § 2502(b).

Section 1102(b) of the Crimes Code compelled the sentencing judge, in this case the late-Honorable David Cashman of the Allegheny County Court of Common Pleas, to

sentence Lee to life imprisonment for the second-degree murder conviction. 18 Pa. C.S. § 1102(b). The Crimes Code does not include a minimum, alternative sentence for felony murder. Accordingly, under Section 1102(b), life imprisonment is both the minimum and maximum sentence for felony murder in the Commonwealth. *See Castle v. Pa. Bd. of Prob. and Parole*, 554 A.2d 625, 628 (Pa. Cmwlth. 1989) (concluding that Section 1102(b)'s omission of "words 'not less than' or 'at least' does not render [an inmate's] sentence something other than a mandatory minimum").

As a result of his life sentence for the felony murder of Victim, Lee is not eligible for parole consideration by the Pennsylvania Parole Board (Board) because of two provisions in the Prisons and Parole Code (Parole Code),[1] which limit the Board's authority. The first is Section 6137(a)(1), which provides the Board generally with the authority to release offenders on parole, "except an offender . . . serving life imprisonment." 61 Pa. C.S. § 6137(a)(1). The second is Section 6137(a)(3), which prohibits the Board from exercising its pardon power before the expiration of the offender's "minimum term." *Id*. § 6137(a)(3). Section 1102(b) of the Crimes Code operates in tandem with Section 6137(a)(1), (3) of the Parole Code to create an overarching sentencing scheme amounting to a mandatory life without parole (LWOP) sentence for every offender convicted of felony murder in the Commonwealth. *See Scott v. Pa. Bd. of Prob. and Parole*, 284 A.3d 178, 192 (Pa. 2022) ("[T]he legislative intent to forever bar parole eligibility for all individuals convicted of second-degree murder is best described as part of the judgment of sentence.").[2]

---

[1] 61 Pa. C.S. §§ 101-6309.

[2] *But see Scott*, 284 A.3d at 199-207 (Wecht, J., dissenting) (disagreeing with majority's conclusion that Parole Code limits on parole eligibility for those serving sentences of life imprisonment are part of sentence).

We accepted discretionary review of this matter to consider Lee's facial constitutional challenge to this mandatory LWOP sentencing scheme for felony murder. In essence, Lee's argument is that not all felony murder offenders are created equal and, therefore, a sentencing scheme that imposes a mandatory LWOP sentence for felony murder regardless of the culpability level of the offender violates, *inter alia*, the Pennsylvania Constitution's prohibition against "cruel punishments."[3] Pa. Const. art. I, § 13. In furtherance of this argument, Lee advances a departure claim under *Commonwealth v. Edmunds*, 586 A.2d 887 (Pa. 1991), urging this Court to interpret our state charter's prohibition against "cruel punishments" as providing greater protection to offenders than that afforded under the Eighth Amendment to the United States Constitution, which prohibits "cruel and unusual punishments." U.S. Const. amend. VIII.

Generally, I agree with the Majority's *Edmunds* analysis and its conclusion that Article I, Section 13 of the Pennsylvania Constitution provides broader protection against "cruel punishments" than that afforded under the Eighth Amendment to the United States Constitution. I further agree, generally, with the Majority's conclusion that a mandatory, or *per se*, LWOP sentence for *all* offenders convicted of felony murder, regardless of criminal intent or level of culpability, runs afoul of the protections afforded under our state charter. I reach these conclusions, however, with some critical reservations.

---

[3] Lee also argues that a sentencing scheme that imposes a mandatory LWOP sentence for felony murder under circumstances where the offender did not kill or intend to kill— *i.e.*, the offender had a categorically diminished culpability—violates the Eighth Amendment to the United States Constitution. The Majority concludes that "the United States Supreme Court's decisions employing a categorical approach, whether involving the death penalty with diminished culpability, or regarding the sentencing of the distinct class of juveniles to mandatory life without parole[,] are, under the Eighth Amendment, distinguishable from an analysis of the mandatory sentencing of adults to life without parole and, at least at this juncture, without additional guidance from the high Court, provide[] no relief" to Lee. (Majority Op. at 28.) I agree with the Majority on this point.

First, the Majority *does not* conclude that Section 1102(b) of the Crimes Code, which imposes a mandatory sentence of life imprisonment for felony murder, is unconstitutional. To the contrary, the Majority concludes that a sentencing scheme that mandates the imposition of LWOP for felony murder, without an assessment of culpability, constitutes "cruel punishment" under Article I, Section 13 of the Pennsylvania Constitution. Indeed, the Majority's mandate preserves life imprisonment as the only legislatively authorized sentence for felony murder. (Majority Op. at 71 (directing that, on remand, sentencing court may sentence to LWOP or life imprisonment accompanied by minimum sentence for purposes of determining parole eligibility).) Why is this important? It is important because, regardless of what the sentencing court decides on remand in this matter, Lee could still spend the rest of his life in prison. Either the sentencing court sentences him again to LWOP, or the sentencing court sentences him to life imprisonment with a minimum term of imprisonment that, once expired, will make him eligible to seek parole from the Board.[4] *See Rogers v. Pa. Bd. of Prob. and Parole*, 724 A.2d 319, 321 n.2 (Pa. 1999) ("Under Pennsylvania law, the minimum term imposed on a prison sentence merely sets the date prior to which a prisoner may *not* be paroled." (emphasis in original)). There is, however, no right to favorable parole consideration by the Board. Indeed, a Board decision to deny parole is not subject to judicial review. *See Pittman v. Pa. Bd. of Prob. and Parole*, 159 A.3d 466, 470 n.7 (Pa. 2017); *Rogers*, 724 A.2d at 323 (rejecting claim of statutory and constitutional right to appeal decision denying parole).

---

[4] I note that this is all Lee has requested. He seeks only "a sentence that will allow him a *meaningful opportunity* to obtain release from incarceration *through the parole system*." (Appellant's Br. at 60 (emphasis added).) In other words, Lee does not challenge his specific sentence of life imprisonment; rather, he challenges only the portion of the sentencing scheme that creates a *per se* prohibition against anyone serving a sentence of life imprisonment for felony murder from access to parole consideration by the Board.

Second, to the extent the Majority's mandate is followed, the proceedings on remand should not turn into a *de facto* parole hearing. *See* 61 Pa. C.S. § 6135(a) (setting forth factors Board is to consider in parole decision). The sentencing court should, based solely on a review of the record of the criminal proceedings, assess Lee's *criminal intent and culpability* with respect to his felony murder conviction and determine whether Lee should, at some point, be eligible for parole. What remains unclear, however, is how to elucidate a judicially manageable standard by which the sentencing court must assess Lee's criminal intent and culpability and translate that assessment into a lawful sentence. A direction on remand to consider Lee's "individual culpability," (Majority Op. at 71), without more, invites widely disparate outcomes between sentencing courts and, in my respectful view, will not fully address the cruel punishment proportionality challenge that the Court sustains in this case.

While the Majority's remand for resentencing is consistent with the Court's mandate in *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013), the Court in *Batts* provided more robust remand guidance to the sentencing court than the Majority does here. In *Batts*, this Court ruled that Pennsylvania's mandatory LWOP sentencing scheme for juveniles convicted of first-degree murder was unconstitutional under the Eighth Amendment to the United States Constitution in light of the United States Supreme Court's deeply divided decision in *Miller v. Alabama*, 567 U.S. 460 (2012). As this Court noted in *Batts*, the *Miller* Court sustained an Eighth Amendment proportionality challenge in that matter because the mandatory nature of the LWOP sentence

> precluded the sentencing court from considering important factors, such as chronological age, level of maturity, family and home environment, the circumstances of the offense, the extent of the juvenile's participation in the unlawful conduct, the impact of familial and peer pressures, the juvenile's ability to negotiate with police or prosecutors, and the possibility of rehabilitation.

*Batts*, 66 A.3d at 291. A juvenile LWOP sentencing scheme that does not afford the opportunity to reflect on these concerns risks disproportionate punishment and, therefore, violates the Eighth Amendment under *Miller. Id.*

With *Miller* decided and controlling, the Court in *Batts* readily concluded that imposition of the Commonwealth's mandatory LWOP sentence imposed on the juvenile appellant in *Batts* violated the juvenile appellant's Eighth Amendment to the United States Constitution right against cruel and unusual punishment and turned its focus to the narrower issue of how to remedy the violation. *Id.* at 293. Ultimately, the Court determined that a remand for resentencing was appropriate with an instruction to the sentencing court to consider "appropriate age-related factors," including:

> a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Id.* at 297 (quoting *Commonwealth v. Knox*, 50 A.3d 732, 745 (Pa. Super. 2012)).

An instruction that the sentencing court on remand consider Lee's "individual culpability" at resentencing is as amorphous and inadequate as directing a resentencing court in a juvenile matter to consider, post-*Miller*, an offender's "age." We gave far greater remand guidance to the sentencing court in *Batts*. Moreover, as we noted in *Batts*, Section 1102.1(d) of the Sentencing Code, added by the General Assembly in 2012 in response to *Miller*, expressly requires a sentencing court to consider certain factors and make findings on the record relative to those factors when determining whether to impose an LWOP sentence on a juvenile:

> (1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the

crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

18 Pa. C.S. § 1102.1(d). Clearly, this post-*Miller* legislative response proves our policymaking branch's willingness, ability, and interest in establishing robust and clear criteria for sentencing courts to apply when assessing whether to impose an LWOP sentence.

We cannot here draw upon guidance from the United States Supreme Court, as we did in *Batts* with respect to age-related factors, for a list of "individual culpability" factors that a sentencing court should apply when deciding whether to impose an LWOP sentence for felony murder *or*, if not, how to set a minimum sentence for purposes of parole eligibility. The parties also do not offer any such guidance in their arguments to the Court. Of course, we could make up our own list. Factors that come to mind in

assessing an offender's individual culpability for the felony murder could include, for example, whether the offender was armed at the time of the murder, whether the offender committed any act of physical violence against the victim during the felony, whether the offender had the opportunity to prevent the murder but chose not to act, whether the offender threatened the victim or anyone else with physical harm, and whether the offender was even present at the time of the murder. To me, any list of factors to guide a sentencing court on remand is preferable to the Majority's nonspecific instruction to consider Lee's "individual culpability."

For all of these reasons, left to my own devices, I would not provide a remedy to Lee for the constitutional violation at this juncture, nor would I telegraph to Lee, the General Assembly, the Governor, or the public at-large how the Court intends to proceed if the General Assembly fails to enact remedial legislation within the time set by the Majority. Indeed, there appear to be multiple legislative options to address the constitutional problem with mandatory LWOP sentences for felony murder as applied to Lee and others serving the same sentence under the same problematic sentencing scheme, and not all would require resentencing. Whether and, if so, how the General Assembly chooses to address this matter will require debate and compromise, and this Court's telegraphing how it will rule in the absence of action within a court-imposed deadline could impede that collaborative process. I would prefer, then, to stay this matter without direction on how the Court plans to proceed thereafter.